Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2019 09:06 AM CDT

In re Trust Created by Jack Fenske, also known as
Jack B. Fenske and John B. Fenske, deceased.
Jennifer Lea Wheeler and Laura Jean Grace, now
known as Laura Jean Wilson, appellants, v.
Elkhorn Valley Bank & Trust, Trustee
of the Jack Fenske, also known as
Jack B. Fenske and John B. Fenske,
Revocable Trust, appellee.

___ N.W.2d ___

Filed June 28, 2019.    No. S-18-262.

1. **Decedents' Estates: Trusts: Equity: Appeal and Error.** The removal of a trustee is a question of equity, and therefore an appellate court reviews the issue de novo on the record.
2. **Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue.
3. **Statutes.** Statutory interpretation presents a question of law.
4. **Judgments: Appeal and Error.** An appellate court independently review questions of law decided by a lower court.

Appeal from the County Court for Madison County: Donna F. Taylor, Judge. Affirmed.

David P. Wilson and Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellants.

Mark D. Fitzgerald, of Fitzgerald, Vetter, Temple & Bartell, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

PAPIK, J.

Nebraska has adopted a section of the Uniform Trust Code which allows a court to remove a trustee if removal is requested by all beneficiaries, removal best serves the interests of all beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable replacement trustee is available to serve. That provision is at issue in this appeal in which trust beneficiaries challenge a county court order denying their petition to remove the trustee. We conclude that the beneficiaries failed to prove that removal of the trustee was not inconsistent with a material purpose of the trust, and therefore we affirm.

## BACKGROUND

*Jack Fenske Trust.*

Jack Fenske, also known as Jack B. Fenske and John B. Fenske, died on December 25, 1998. His last will and testament, executed about a year before his death, devised most of his property to Elkhorn Valley Bank & Trust (the Bank), as trustee, for the benefit of specific family members. Those family members included the appellants in this case, Jennifer Lea Wheeler (Jennifer) and Laura Jean Grace, now known as Laura Jean Wilson (Laura). The trust provided as follows:

b. Ninety-five percent (95%) [of the principal balance] for my niece . . . to hold and manage the same until the death of my said niece, with directions to said Trustee to distribute the annual income from the corpus of said trust to [my niece] annually, with the restriction that there be no invasion of the corpus of this trust by my said Trustee except for distribution for educational expenses for my greatnieces [sic], Jennifer . . . and Laura . . . . I further direct that upon the death of my niece . . . the annual income from the corpus of the trust shall be distributed in equal shares annually to my greatnieces [sic], Jennifer . . . and Laura . . . , in equal shares. The Trustee is specifically authorized to invade the corpus at

any time for distribution to Jennifer . . . and Laura . . .
for educational expenses.

    c. At the death of Jennifer . . . and Laura . . . , the
Trustee shall distribute all remaining corpus and accumu-
lated income, if any, to the heirs of Jennifer . . . and Laura
. . . in equal shares.

Fenske's niece died prior to Fenske, and consequently,
Jennifer and Laura began receiving income distributions from
the trust upon Fenske's death. Trust assets were also available
to them for educational purposes. At all times relevant to these
proceedings, Jennifer had two adult children and Laura had
one adult child.

The parties do not dispute that as of September 2017, the
trust property consisted of approximately $52,000 in money
market funds, agricultural land assessed at approximately
$278,500, and a nearly $30,000 debt owed by Jennifer.

## Request for Trustee's Resignation.

It is undisputed that Jennifer, Laura, and their children
all support removing the Bank as trustee and replacing it
with David P. Wilson, Laura's husband who is an attorney.
According to the record, in 2016, Wilson relayed a request that
the Bank voluntarily resign as trustee, citing concerns about
trust income and an intent to initiate termination of the trust.

The Bank refused to resign. It stated in a letter that the
request for the Bank's resignation and the plan to terminate
the trust were not consistent with the material terms of the
trust, noting that a member of the Bank's trust committee knew
Fenske personally and had some insight into why he set up the
trust as he had. The Bank offered to discuss concerns about the
trust income and the pros and cons of liquidating the trust real
estate, but received no response.

## "Petition to Modify."

On September 22, 2017, Jennifer and Laura filed a "Petition
to Modify" the trust to remove the Bank as trustee and approve
Wilson as successor trustee. They invoked Neb. Rev. Stat.

§ 30-3862(b)(4) (Reissue 2016), a provision of the Uniform Trust Code.

According to the petition, there had been a substantial change in circumstances and the removal of the Bank as trustee was requested by all the qualified beneficiaries. Jennifer and Laura further alleged that the removal of the Bank served the interests of all the beneficiaries, that it was not inconsistent with a material purpose of the trust, and that a suitable successor trustee was available. In addition, Jennifer and Laura asserted that they had completed their educational goals, that trust administration fees had exceeded trust income in recent years, and that Wilson was available to serve as successor trustee free of charge.

The Bank filed a general objection to the petition to modify.

*Hearing on Petition to Modify.*

At the hearing on the petition to modify, Laura testified about the operation of the trust as to herself and Jennifer. Laura stated that she used trust funds to obtain a master of business administration and a law degree and that she would not require additional funds from the trust for educational purposes. Laura testified that Jennifer also obtained money from the trust to fund educational pursuits. To the best of Laura's knowledge, Jennifer would not require additional funds from the trust for educational purposes.

As to Fenske's intentions, Laura characterized Fenske as a frugal man who was generous to his family, including Jennifer and Laura. According to Laura, Fenske never married and viewed her and Jennifer as grandchildren. Based on her knowledge of him, Laura believed that Fenske established the trust to share his assets with his family. In her opinion, removing the Bank as trustee would not frustrate that purpose.

Laura admitted that the Bank had not committed any wrongdoing in administering the trust. Instead, Laura expressed concern about the fees the Bank was charging for its services as trustee. Laura preferred that Wilson serve as trustee, because

she believed he had the necessary knowledge and experience to serve as a competent trustee and he had agreed to serve without charging fees.

Laura acknowledged, however, that reducing the fees charged to the trust was not the only reason motivating the effort to have the Bank removed. She testified that removing the Bank as trustee was part of a plan, which she hoped would culminate in the termination of the trust, the liquidation of the trust assets, and the distribution of the proceeds to the qualified beneficiaries in a manner yet to be determined.

Richard Stafford, the attorney who did Fenske's estate planning as well as other legal work, also testified. Stafford, who had known Fenske since the 1970's, described him as an "old-school farmer," for whom acquiring and holding land was "paramount." According to Stafford, Fenske did not accept the notion that he was not going to own and control his land forever.

Fenske had resisted estate planning for years until he surprised Stafford by discussing a will. Stafford stated that it was possible that Fenske's will and trust document was drafted in one sitting and signed on the same day. Stafford explained that this was likely the reason Fenske's explicit wishes were not included in the document, as they typically would be.

However, Stafford testified that in preparing the will and trust, Fenske expressed the desire to delay vesting in his beneficiaries, because he did not believe his brothers or anyone he knew were capable of handling his estate or his assets according to his wishes and he did not want them "squandered." Stafford also testified that Fenske wanted a trustee "to keep it together as long as it could possibly be kept together" and "to hold on to the land for as long as possible," because Fenske viewed owning agricultural property as a "sign of success."

Stafford testified that Fenske wanted the trustee to be "independent." Moreover, he had a history with the Bank, which operated the only full-time trust department in the area. Fenske also knew the Bank's president, who still held that position

at the time of trial. When asked if there was a reason why a trustee other than the Bank could not carry out the material purposes of the trust, Stafford replied, "No, other than . . . the one thing that I think [Fenske] was really trying to get away from was to have any of his relatives being in charge of his assets."

Regarding Fenske's specific intentions toward the beneficiaries, Stafford stated, "[Fenske] wanted to take care of [his niece] and wanted to keep his assets together for yet another generation while providing educational benefits and the annual income to the interim generation." In Stafford's opinion, Fenske appreciated the value of education, but he appreciated the value of farmwork more.

A trust officer for the Bank described the assets of the trust and the issues confronting the trustee and the beneficiaries. At the time of trial, the trust property included some liquid assets, but the bulk of it was composed of agricultural land that was rented as pasture at fair market value for northeast Nebraska, producing income that did not reflect the value of the land. The trust officer testified that the proximity of the land to Norfolk, Nebraska, gave the land potential for development, but sale of the land would result in significant capital gains taxes that would deplete the principal trust assets. Nonetheless, in its response to the requested resignation, the Bank had expressed a willingness to discuss concerns with the trust income and liquidating the trust real estate.

The county court also received a summary of distributions and fees prepared by the Bank. This indicated that in the previous 6 years, the trustee fees slightly exceeded the distributions of income, but that nearly $240,000 in principal had also been distributed. The Bank's trust officer attributed the principal distributions to Jennifer's and Laura's educational pursuits.

*County Court's Order.*

After receiving briefs from the parties, the county court issued a written order denying the petition to remove the Bank

as trustee. It found that no substantial change in circumstances had occurred. The county court did conclude that all the qualified beneficiaries had requested removal as required by § 30-3862(b)(4). However, the county court determined that it did not have enough information to determine whether removal would best serve the interests of all qualified beneficiaries.

Furthermore, the county court found that removal would be inconsistent with a material purpose of the trust. On that question, the county court emphasized that Fenske appointed the Bank as trustee and characterized as speculation Jennifer and Laura's position that he appointed the Bank only because he had no family members capable of serving as trustee. The county court also expressed concern with Laura's admission that one of the purposes for removing the trustee was to seek to have the trust terminated, a result the county court described as inconsistent with the terms of the trust.

Finally, the county court concluded that Wilson was not a suitable successor trustee for purposes of § 30-3862(b)(4). While the court acknowledged Wilson's general qualifications to administer a trust, it found he was not suitable to serve as trustee in this case, because he had not been nominated by Fenske and his stated intention to terminate the trust was contrary to its provisions.

Jennifer and Laura now appeal.

## ASSIGNMENTS OF ERROR

Jennifer and Laura assign, condensed and restated, that the county court erred in (1) finding that they had not satisfied all the requirements of § 30-3862(b)(4) and (2) applying a "clearly stated provision" standard rather than a "material purpose" standard.

## STANDARD OF REVIEW

[1,2] Where a question of equity is presented in a trust administration matter, appellate review of that issue is de novo on the record. See *In re Henry B. Wilson, Jr., Revocable Trust*,

300 Neb. 455, 915 N.W.2d 50 (2018). The removal of a trustee is a question of equity, and therefore an appellate court reviews the issue de novo on the record. *Id.* In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011).

[3,4] Statutory interpretation presents a question of law. *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018). We independently review questions of law decided by a lower court. *Id.*

## ANALYSIS

*Statutory Authority Governing*
*Trustee Removal.*

We begin by setting forth the relevant statutory authority. Section 30-3862, which became operative in 2005, is identical to § 706 of the Uniform Trust Code. It provides authority for courts to remove trustees under various circumstances. Relevant to this appeal, it provides:

> (a) The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative.
>
> (b) The court may remove a trustee if:
>
> . . . .
>
> (4) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

This appears to be this court's first opportunity to interpret and apply this language. Some courts have referred to the grounds for removal set forth above as a "no-fault" removal provision, because it allows for removal with no showing of wrongdoing on the part of the trustee. See, e.g., *In re*

*McKinney*, 67 A.3d 824 (Pa. Super. 2013); *Litoff v. Albright*, No. NNHCV136037921S, 2014 WL 3584834 (Conn. Super. June 17, 2014) (unpublished opinion). Instead, a court may remove a trustee if the party seeking removal shows that (1) removal is requested by all the beneficiaries, (2) removal of the trustee best serves the interests of all the beneficiaries, (3) removal is not inconsistent with a material purpose of the trust, and (4) a suitable replacement trustee is available.

Jennifer and Laura contend that they demonstrated each of the above elements in this case. No one disputes that removal was requested by all the beneficiaries. But we have occasion to address only one of the other elements that are in dispute— whether removal of the Bank would be inconsistent with a material purpose of the trust. Our analysis of that issue follows in the sections below.

*When Is Removal of Trustee*
*Inconsistent With Material*
*Purpose of Trust?*

Before turning to whether removal of the Bank would be inconsistent with a material purpose of the trust in this case, we pause to consider what that question entails. Crucial to our analysis is, of course, what it means under § 30-3862(b)(4) for a proposed trustee removal to be "inconsistent with a material purpose of the trust." Nebraska's Uniform Trust Code does not define "material purpose." However, the comments to the Uniform Trust Code provide some guidance, and the Legislature directly referred to sections of the code when adopting it, thereby incorporating those comments. See *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018).

The most guidance regarding the meaning of "material purpose" can be found in the comment to § 411 of the Uniform Trust Code, a provision that makes the material purposes of a trust relevant to whether termination or modification of a trust is permitted. See Neb. Rev. Stat. § 30-3837 (Reissue 2016). We find the comment to § 411 useful, because the

comment to § 706 of the Uniform Trust Code explains that it is "a specific but more limited application of" § 411. Unif. Trust Code § 706, 7D U.L.A. 254 (2018). The comment to § 411 states:

> In order to be material, the purpose . . . must be of some significance: "Material purposes are not readily to be inferred. A finding of such a purpose generally requires some showing of a particular concern or objective on the part of the settlor, such as concern with regard to a beneficiary's management skills, judgment, or level of maturity."

Unif. Trust Code § 411, 7D U.L.A. 160 (2018), quoting Restatement (Third) of Trusts § 65, comment *d*. (2003).

The Restatement commentary quoted in the comment on the Uniform Trust Code elaborates further on the meaning of material purpose in this context. It provides:

> Thus, a court may look for some circumstantial or other evidence indicating that the trust arrangement represented to the settlor more than a method of allocating the benefits of property among multiple intended beneficiaries, or a means of offering to the beneficiaries (but not imposing on them) a particular advantage. Sometimes, of course, the very nature or design of a trust suggests its protective nature or some other material purpose.

Restatement, *supra*, § 65, comment *d.* at 477.

> [A] particular change of trustee . . . might have the effect of materially undermining the contemplated qualities or independence of trustees. A given change might even have the effect of shifting effective control of the trust in such a way as to be inconsistent with a protective management purpose or other material purpose of the trust. Thus, changes of trustees . . . are to be particularly but sympathetically scrutinized for possible conflict with a material trust purpose.

*Id.*, comment *f.* at 481.

Finally, the comment accompanying § 706 states:

> Because of the discretion normally granted to a trustee, the settlor's confidence in the judgment of the particular person whom the settlor selected to act as trustee is entitled to considerable weight. This deference to the settlor's choice can weaken or dissolve if a substantial change in the trustee's circumstances occurs.

Unif. Trust Code, *supra*, § 706, 7D U.L.A. 254.

We understand the commentary set forth above to indicate that the question whether the proposed replacement of a trustee is inconsistent with a material purpose of the trust depends on the significance to the settlor of the initial choice of trustee. For example, there may be cases in which there is no indication that the particular trustee or the qualities that trustee brought to the assignment were an important consideration for the settlor. In those types of cases—where the current trustee is merely an incidental means to accomplish ends—removal would not be inconsistent with a material purpose. Courts from other jurisdictions with the same or similar "no-fault" removal provisions have reached that conclusion. See, e.g., *Matter of Trust of Hildebrandt*, 53 Kan. App. 2d 368, 388 P.3d 918 (2017) (where initial trustee was selected by drafting attorney without input from settlor, removal found not to be inconsistent with material purpose); *In re McKinney*, 67 A.3d 824 (Pa. Super. 2013) (where trustee chosen by settlor no longer existed and material purpose could be accomplished by qualified successor trustee, removal found not to be inconsistent with material purpose); *Fleet Bank v. Foote*, No. CV020087512S, 2003 WL 22962488 (Conn. Super. Dec. 2, 2003) (unpublished opinion) (where settlor desired only qualified services and initial trustee no longer existed, removal found not to be inconsistent with material purpose).

On the other hand, however, are cases in which it is important to the settlor that a particular person or entity or a person or entity with particular qualities serve as trustee. The

Uniform Trust Code and the Restatement commentary quoted above indicate that in those circumstances, replacement of the selected trustee with another person or entity or a person or entity that lacked the desired qualities would be inconsistent with a material purpose.

As noted above, one of Jennifer and Laura's assignments of error is that the county court misapplied the "material purpose" standard of § 30-3862(b)(4) by finding that removal of the Bank was not permitted by the terms of the trust. While the county court did state at one point in its order that removal would be inconsistent "with the clearly stated provisions of the trust," it is not clear to us that the county court failed to conduct a proper material purpose inquiry. And, even if it did, it is inconsequential, as we are obligated to reach our own conclusion on appeal as to whether removal would be inconsistent with a material purpose of the trust. See *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011). We proceed to that question now.

*Removal of Bank Would Be
Inconsistent With Material
Purpose of Trust.*

Unlike cases in which the settlor's considerations must be deduced from entirely circumstantial evidence, the record in this case contains relatively direct evidence of what Fenske hoped to accomplish through the trust and why he selected the Bank to serve as trustee. As noted above, Fenske's attorney, Stafford, provided testimony regarding his understanding of Fenske's estate planning aims. He testified that Fenske's objective was "to keep [the trust assets] together as long as [they] could possibly be kept together." As for why the Bank was selected as trustee, Stafford noted that Fenske had a history with the Bank and a relationship with its president and that that person was still serving as president of the Bank at the time of trial. Stafford also testified that Fenske wanted a trustee who was "independent." Stafford elaborated on the

idea of independence when he was asked if someone other than the Bank could carry out the material purposes of the trust. Stafford responded that "the one thing that I think [Fenske] was really trying to get away from was to have any of his relatives being in charge of his assets."

Based on Stafford's testimony and the terms of the trust, the Bank argues that it would be inconsistent with a material purpose of the trust to replace the Bank with Wilson. The Bank argues that Fenske wanted the trust to be left intact until the deaths of Jennifer and Laura and that it would be inconsistent with his purpose if the Bank was replaced by Wilson as part of an attempt to ultimately terminate the trust. It does appear from both the terms of the trust and Stafford's testimony that it was important to Fenske that the trust assets remain intact until the deaths of Jennifer and Laura. Jennifer and Laura counter, however, that even if the Bank is correct about Fenske's wishes, Wilson could not thwart those wishes as trustee, because he would be bound by the same legal requirements as the Bank and the trust could be terminated only if permitted by the court under a separate motion under § 30-3837.

In the end, we need not resolve whether and to what extent Laura's admission that this motion is part of an attempt to terminate the trust ought to affect the material purpose analysis, because even if it is set to the side, we would find that removal is inconsistent with a material purpose of the trust for another reason. Stafford testified that the Bank was selected because Fenske wanted a trustee that was "independent" and that he did not want a trustee that was a part of his family. This testimony suggests that the selection of the Bank as trustee was more than an incidental means to an end, but that independence from his family was, for Fenske, an important quality in a trustee. The Restatement comments we quoted above recognize that a proposed trustee removal and replacement "might have the effect of materially undermining the contemplated qualities or independence of trustees."

Restatement (Third) of Trusts § 65, comment *f.* at 481 (2003). In our view, replacing the Bank with Wilson, Laura's husband, would do so here. Because we find that removal of the Bank would be inconsistent with a material purpose of the trust, we conclude that the county court did not err in denying Jennifer and Laura's motion.

## CONCLUSION

For the foregoing reasons, we affirm the order of the county court that denied Jennifer and Laura's request to remove the Bank as trustee.

Affirmed.