Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/07/2021 08:12 AM CDT

In re Trust Created by Clifford Allen
McGregor, deceased.
Allen E. McGregor, appellant, v.
Evelyn L. McGregor, appellee.

___ N.W.2d ___

Filed February 12, 2021.    No. S-20-281.

1. **Trusts: Equity: Appeal and Error.** Trust administration matters are reviewed for error appearing on the record, absent an equity question.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Wills: Trusts.** The interpretation of the words in a will or a trust presents a question of law.
4. **Judgments: Appeal and Error.** In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.
5. **Trusts.** A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust.
6. **Trusts: Presumptions.** A spendthrift provision in the terms of the trust is presumed to constitute a material purpose of the trust.
7. **Trusts: Words and Phrases.** "Spendthrift provision" means a term of a trust which restrains both voluntary and involuntary transfer of a beneficiary's interest.
8. **Trusts.** The material purposes of a trust are subject to the settlor's discretion, to the extent that its purposes are lawful, are not contrary to public policy, are possible to achieve, and are for the benefit of its beneficiaries.
9. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the County Court for Hayes County: Anne M. Paine, Judge. Affirmed.

Galen E. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Larry R. Baumann and Christine E. Seck, of Kelley, Scritsmier & Byrne, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Allen E. McGregor, a beneficiary of a trust created by his father, Clifford Allen McGregor, now deceased, petitioned the county court for Hayes County, Nebraska, for approval of a nonjudicial settlement agreement. After a trial, the court declined to approve the agreement. Allen appeals. We hold the nonjudicial settlement agreement violates a material purpose of the trust. Therefore, we affirm the decision of the county court.

BACKGROUND

Clifford died on October 15, 2009. Evelyn L. McGregor is Clifford's surviving spouse. Prior to Clifford's death, Clifford and Evelyn created separate trusts and equally divided their real estate into their respective trusts. Clifford's trust was titled the "C.A. McGregor Trust." The trust states that it "shall be administered and disposed of in accordance with the provisions of [the] trust instrument." Clifford reserved the right to revoke or amend all or any part of the trust during his lifetime. Clifford and Evelyn were cotrustees.

When Clifford died, the trust became irrevocable and Evelyn became the sole trustee. After providing for the payment of funeral expenses and the disposition of certain itemized personal property, the trust created an irrevocable trust, known as the C.A. McGregor Family Trust (Family Trust), which held the remaining assets of the trust estate. Evelyn retained all

net income generated from the real estate owned by the Family Trust and paid all real estate expenses, such as real estate taxes and income taxes.

The Family Trust creates separate "carve-out" trusts for Clifford and Evelyn's two children, Allen and Debra L. Schardt (Debra). Upon Evelyn's death, the rest and residue of the Family Trust is to be equally distributed to the separate carve-out trusts, which are named the "Allen Eugene McGregor Family Trust" and the "Debra Louise Schardt Family Trust." The Family Trust states that it is Clifford's intent, to the extent possible, to treat the children equally. If the Family Trust contains sufficient funds, the value of the distributions to the separate carve-out trusts will be equalized. However, if there are insufficient funds, the distributions will not be equalized.

Allen and Debra are to become the trustee of his or her respective trust. The trust instrument states that the assets of the carve-out trusts "shall remain in trust" and that the trusts "shall be irrevocable and shall not be revoked or amended in whole or in part by the trustee, beneficiary or any other person." In the event of the death, resignation, or inability of a trustee of a carve-out trust, the Family Trust contains provisions to select a successor trustee, which could include a survivor of Allen and Debra, or a designated corporation or bank.

Until the death of Allen or Debra, the trustee of his or her respective trust shall from time to time, in his or her discretion, pay for the health, education, support, or maintenance of his or her children or grandchildren. In distributing trust income, the trustee must give first priority to Allen or Debra and secondary priority to Allen's or Debra's respective children. The trust instrument states that it is Clifford's intent that each carve-out trust be construed as "a non-support discretionary spendthrift trust that may not be reached by the beneficiaries['] creditors for any reason." Upon the death of Allen or Debra, pursuant to a limited power of appointment, the trustee of the deceased's carve-out trust may transfer the remainder of the separate trust for the benefit of a person, corporation, or other entity, but

it shall not be exercised in favor of Allen or Debra, his or her estate, or creditors of his or her estate.

In May 2011, Evelyn, Allen, and Debra entered into a trust settlement agreement, which, upon Evelyn's death, provides for the distribution of the Family Trust's assets directly to Allen and Debra, free of trust. Per the agreement, Allen would receive an additional tract of real estate not distributed under the Family Trust. Further, the agreement requires an equalization payment between Allen and Debra. In May 2017, Evelyn emailed Allen, purporting to revoke the agreement.

On July 25, 2018, pursuant to Neb. Rev. Stat. § 30-3811 (Reissue 2016), Allen filed this action in the county court for Hayes County seeking approval of the agreement and an order requiring compliance with the terms of the agreement. Evelyn filed an answer requesting that the court find the agreement to be nonbinding and alleging that the agreement violates a material purpose of the trust; did not include all potential beneficiaries, such as the issue of Allen or Debra; and lacked consideration.

Allen moved for summary judgment in June 2019. Following a hearing, the court issued a written order overruling Allen's motion. The court found that according to the terms of the Family Trust, upon the death of Evelyn, four specific tracts of real estate would be transferred to Allen in trust and one specific tract of real estate would be transferred to Debra in trust. Debra would also receive, in trust, a Ford Model T. The remaining trust estate at the time of Evelyn's death was to be equally distributed to the two carve-out trusts. However, equalization would depend on the availability of liquid assets. The court further found that the trust settlement agreement modified the Family Trust "in several ways."

The matter then proceeded to a bench trial. After trial, the court issued an order rejecting the agreement and finding that the agreement was nonbinding under § 30-3811.

The court first analyzed the issue of "interested persons." Section 30-3811(a) states that "'interested persons' means

persons whose consent would be required in order to achieve a binding settlement were the settlement to be approved by the court." The court found that § 30-3811 required that all interested persons consent to the agreement, but noted that there are no published Nebraska cases addressing the issue of "interested persons" in the context of nonjudicial settlement agreements. As an aside, the court noted that the Nebraska Court of Appeals considered the issue of indispensable parties in a case involving parties seeking to modify a trust.[1]

Regarding the case at hand, the court found that upon the death of Allen or Debra, the assets of the carve-out trusts would be distributed pursuant to a limited power of appointment or, in the event of a default, the assets would be distributed to the issue of Allen or Debra per stirpes. The court further found that although yet unknown and undetermined, the beneficiaries of the carve-out trusts are a specific class of beneficiaries whose rights are affected by the agreement, and that thus the beneficiaries qualify as "interested persons." Because the unknown and undetermined beneficiaries had not consented to the agreement, the court determined that Allen failed to establish under § 30-3811 an enforceable nonjudicial settlement agreement.

The court then analyzed the requirements of § 30-3811(c), while assuming that all interested persons had consented to the agreement. Section 30-3811(c) states in part that "[a] nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust . . . ." The court found that the agreement violates a material purpose of the Family Trust, because the agreement sought to change specific terms of the irrevocable trust in at least three respects. First, Allen would receive an additional tract of land which he would not receive under the Family Trust. Second, upon Evelyn's death, Allen and Debra would receive the assets of the carve-out

---

[1] See *In re Trust Created by Augustin*, 27 Neb. App. 593, 935 N.W.2d 493 (2019).

trusts outright rather than in trust. Third, Allen and Debra would be required to equalize their distributions, either through an allocation of debt or cash settlement. The court found that none of these issues came within the categories of matters which may be resolved through nonjudicial settlement agreements under § 30-3811(d). The court found the changes made by the agreement were substantial and constituted a violation of a material purpose of the trust, which was to leave the real estate in trust for the benefit of Allen and Debra during their lives and then pass on to their issue upon their deaths.

Allen filed an appeal. We moved the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Allen assigns, restated, that the court erred in (1) finding a lack of consent by all interested persons and (2) finding that the agreement altered a material purpose of the trust.

## STANDARD OF REVIEW

[1,2] Trust administration matters are reviewed for error appearing on the record, absent an equity question.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[3,4] The interpretation of the words in a will or a trust presents a question of law.[4] In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.[5]

---

[2] See, *In re Henry B. Wilson, Jr., Revocable Trust*, 300 Neb. 455, 915 N.W.2d 50 (2018); *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018); *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

[3] *In re Trust Created by Isvik*, 274 Neb. 525, 741 N.W.2d 638 (2007); *In re Trust Created by Inman*, 269 Neb. 376, 693 N.W.2d 514 (2005).

[4] *In re Estate of Barger*, 303 Neb. 817, 931 N.W.2d 660 (2019).

[5] *In re Trust Created by Nabity*, 289 Neb. 164, 854 N.W.2d 551 (2014).

## ANALYSIS

### Material Purpose of Trust

We begin our analysis by considering Allen's second assignment of error, because its resolution is dispositive of his appeal. Allen argues that the county court erred in finding that the trust settlement agreement violates a material purpose of the Family Trust. Allen contends that Evelyn wanted to modify the trust in order to carry out Clifford's intentions. Allen relies upon a recital in the agreement in which "Evelyn asserts the provisions for distribution of the trust estate in the [C.A. McGregor Trust] do not represent the intentions of [Clifford]." Specifically, Allen contends that modifying the terms of the trust to require equalization of the distributions to the carve-out trusts rather than making equalization dependent on the availability of liquid assets better serves Clifford's intent to treat his children equally.

Although disputes involving the administration of trusts are encouraged to be resolved through nonjudicial means,[6] § 30-3811 of the Nebraska Uniform Trust Code, see Neb. Rev. Stat. §§ 30-3801 to 30-38,110 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019), authorizes the court to determine the validity of a nonjudicial settlement agreement according to the provisions of the code or other applicable laws.

[5-8] In declining to approve the agreement, the court relied upon § 30-3811(c), which provides: "A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust . . . . A spendthrift provision in the terms of the trust is presumed to constitute a material purpose of the trust." "Spendthrift provision" means "a term of

---

[6] See Unif. Trust Code § 111, comment, 7D U.L.A. 101 (2018). See, also, *In re Trust Created by Fenske*, 303 Neb. 430, 930 N.W.2d 43 (2019) (comments to Uniform Trust Code provide guidance as to Nebraska Uniform Trust Code), citing *In re Trust of Shire, supra* note 2; *In re Trust Created by Isvik, supra* note 3; John M. Gradwohl & William H. Lyons, *Constitutional and Other Issues in the Application of the Nebraska Uniform Trust Code to Preexisting Trusts*, 82 Neb. L. Rev. 312 (2003).

a trust which restrains both voluntary and involuntary transfer of a beneficiary's interest."[7] "'[T]he very nature or design of a trust suggests its protective nature or some other material purpose.'"[8] The material purposes of a trust are subject to the settlor's discretion, to the extent that its purposes are lawful, are not contrary to public policy, are possible to achieve, and are for the benefit of its beneficiaries.[9]

The Restatement (Second) of Trusts § 337(2) (1959) adopts the "material purpose" rule, which states: "If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination."[10] In *In re Estate of Somers*,[11] the Kansas Supreme Court considered the issue of whether a court can terminate a spendthrift trust at the request of the beneficiaries, if the settlor is not available to consent to the termination. The court relied upon the Restatement (Second) of Trusts § 337, comment *l.*, which proscribes the termination of spendthrift trusts, stating: "If by the terms of the trust . . . the interest of one or more of the beneficiaries is made inalienable . . . , the trust will not be terminated while such inalienable interest still exists, although all of the beneficiaries desire to terminate it . . . ." The court held that because the beneficiaries offered no evidence to rebut the presumption that the spendthrift provision was a material purpose of the trust, termination of the trust would frustrate a material purpose of the trust.[12]

---

[7] § 30-3803(17).

[8] See *In re Trust Created by Fenske, supra* note 6, 303 Neb. at 439, 930 N.W.2d at 49, quoting Restatement (Third) of Trusts § 65, comment *d.* (2003).

[9] See § 30-3830.

[10] See Gradwohl & Lyons, *supra* note 6.

[11] *In re Estate of Somers*, 277 Kan. 761, 89 P.3d 898 (2004).

[12] *Id*. See, also, *Neeley v. Neeley*, 26 Kan. App. 2d 924, 996 P.2d 346 (2000); *Germann v. New York Life Ins. Co.*, 286 S.C. 34, 331 S.E.2d 385 (S.C. App. 1985).

Here, we find that the trust instrument contains spend-thrift provisions. During his life, Clifford reserved the right to revoke or amend all or any part of the trust. Upon his death, Clifford's trust became irrevocable and created the irrevocable Family Trust. The trust instrument specifically states that it "shall be administered and disposed of in accordance with the provisions of [the] trust instrument." The Family Trust states that the estate assets provided for in the carve-out trusts "shall remain in trust" and that the carve-out trusts "shall be irrev-ocable and shall not be revoked or amended in whole or in part by the trustee, beneficiary or any other person." Clifford specifically stated in his trust that his intent was to have each carve-out trust be construed as "a non-support discretionary spendthrift trust that may not be reached by the beneficiaries['] creditors for any reason." The record thus makes clear that the overriding intent and design of the Family Trust is to hold the beneficiaries' interests in trust and restrain the transfer of such interests. The trust settlement agreement violates this funda-mental and material purpose of the trust, because the agree-ment distributes estate assets to the beneficiaries outright rather than in trust. This provision of the agreement would allow the assets to "be reached by the beneficiaries['] creditors" and would allow Allen and Debra to transfer the assets during their lifetimes, which directly conflicts with the limited power of appointment provided by the carve-out trusts.

We find no evidence offered by Allen to rebut the presump-tion that the spendthrift provisions constitute a material pur-pose of the trust. Allen argues that the court should give weight to the fact Evelyn supported the agreement and asserts that Clifford's trust and Evelyn's trust were intended to be joint and reciprocal. However, this assertion is defeated by a detailed provision in Clifford's trust which sets forth his intention to have his trust operate independently of Evelyn's trust.

We conclude that the spendthrift provisions of the Family Trust establish a material purpose of the trust, which the set-tlement agreement violates by transferring the trust assets to

Allen and Debra outright rather than in trust. Because the agreement violates a material purpose of the trust, under the requirements of § 30-3811(c), the agreement is invalid. The probate court did not err in declining to approve the agreement.

### INTERESTED PERSONS

[9] Because the probate court correctly determined that the settlement agreement violates a material purpose of the Family Trust, we need not consider Allen's assignment of error that the court erred in finding that an unknown and undetermined class of beneficiaries was required to consent to the trust settlement agreement. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[13]

For completeness, we note that the concept of "interested persons" under § 30-3811 is legally distinct from "indispensable parties" in the context of Neb. Rev. Stat. § 25-323 (Reissue 2016).[14] The county court referred to indispensable parties only in passing while remarking on the lack of Nebraska precedent on the subject of "interested persons." The court did not dismiss Allen's petition based on a lack of jurisdiction due to the absence of an indispensable party in the case. Debra appeared with counsel at trial and did not appeal.

### CONCLUSION

For the foregoing reason, we affirm the order of the county court which denied Allen's request for approval of a nonjudicial settlement agreement.

AFFIRMED.

---

[13] *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020).

[14] See *In re Trust Created by Augustin, supra* note 1, citing *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017).