IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE TRUST OF WEGENER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE TRUST OF WEGENER

RANDALL WEGENER ET AL., APPELLANTS,

V.

ROBIN WEGENER, APPELLEE.

Filed January 17, 2023.    No. A-22-012.

Appeal from the County Court for Platte County: FRANK J. SKORUPA, Judge. Affirmed.

Benjamin M. Wegener, of Wegener Scarborough & Lane, P.C., for appellants.

Cathy S. Trent-Vilim and Brian J. Brislen, of Lamson Dugan & Murray, L.L.P., for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Randall, Robert, Gerald, and Mark Wegener (collectively "the Appellants") appeal from the Platte County Court's order approving two amendments to the Stephen Wegener Special Needs Trust as nonjudicial settlement agreements and declaring Robin Wegener as the trustee. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

In March 2006, Emmert and Rita Wegener, the parents of Stephen Wegener, created the Stephen Wegener Special Needs Trust, an irrevocable noncharitable trust (hereinafter referred to as the "Special Needs Trust"), which was established to provide for Stephen's special needs. The Special Needs Trust appointed Emmert and Rita as trustees and appointed Stephen's brothers,

- 1 -

Gerald, Robert, Randall, Richard, and Mark as successor trustees and beneficiaries upon Stephen's death. Rita passed away shortly after the Special Needs Trust was established leaving Emmert as the sole trustee of the Special Needs Trust. After Rita's death, Stephen's needs increased and Richard and his wife, Robin Wegener, increased their role as caretakers for Stephen.

In January 2008, Emmert, in his capacity as the settlor and trustee of the Special Needs Trust and as personal representative of Rita's estate, executed an amendment to the Special Needs Trust (Amendment I) appointing Richard as successor trustee and the Appellants as second successor trustees. Amendment I recited, in part, that the amendment was being made because, since Rita's death, "Richard . . . has been the primary family member to assist with the needs of his brother, Stephen Wegener." Emmert signed Amendment I but did not obtain signatures of all of the interested parties of the Special Needs Trust.

In September 2010, Emmert resigned as trustee and Richard executed an acceptance of appointment as successor trustee. The following month, Emmert, acting in his capacity as settlor, and Richard, acting in his capacity as trustee, executed a second amendment to the Special Needs Trust (Amendment II) appointing Richard as the trustee; naming Richard's wife, Robin, as successor trustee; and naming the Appellants as second successor trustees. Amendment II recited, in part, that the amendment was being made for the reason that, "[s]ince before and after the resignation of Emmert . . ., Richard Wegener's spouse Robin Wegener has handled much of the assistance involving Stephen Wegener." Except for Emmert and Richard, no other interested parties signed Amendment II.

In October 2015, Emmert passed away. In December 2016, the parties entered into a Family Settlement Agreement to finalize Emmert's estate. The Family Settlement Agreement modified Emmert and Rita's trusts to equally distribute the assets of those trusts to the six beneficiaries: Gerald, Stephen, Robert, Randall, Richard, and Mark, with Stephen's share of the assets to be placed in the Special Needs Trust. Paragraph 3 of the Family Settlement Agreement provided:

> Richard Wegener is the Successor Trustee of The Stephen Wegener Special Needs Trust dated March 16, 2006, and amended January 18, 2008[,] and October 22, 2010, respectively. The originals of such Trust, and such Amendments, will be submitted to the Court with the Petition for Trust Administration in a separate proceeding.

Paragraph 7H of the Family Settlement Agreement provided:

> The parties understand and agree that the terms of this Family Settlement Agreement shall not be binding and revocable until an Order has been issued by a Court of Competent jurisdiction, approving the modification of both the Emmert P. Wegener Revocable Trust and [t]he Rita M. Wegener Revocable Trust, and an Order authorizing the Trustee of The Stephen Wegener Special Needs Trust to enter into and agree to the terms of this Family settlement Agreement.

Additionally, the Family Settlement Agreement included the following "CONSENT":

> Comes now Gerald Wegener, Robert Wegener, Randall Wegener, Richard Wegener and Mark Wegener, the only beneficiaries of any remainder interest upon the death of Stephen Wegener in The Stephen Wegener Special Needs Trust dated March 16,

2006, and amended January 18, 2008, and October 22, 2010, respectively, and hereby consent to a Court of competent jurisdiction entering an Order, without further notice and hearing, authorizing Richard Wegener, as Trustee of the Stephen Wegener Special Needs Trust, as amended, to agree to and sign, on behalf of The Stephen Wegener Special Needs Trust, as amended, the foregoing and attached Family Settlement Agreement.

Gerald, Robert, Randall, Richard, and Mark all signed the Family Settlement Agreement. The Family Settlement Agreement was approved by the court in an order issued on December 21, 2016, in which the court ordered a distribution of assets, including real property from Emmert and Rita's trusts, in accordance with the terms contained in the Family Settlement Agreement.

Richard passed away in May 2021 and was survived by Robin and his two children. Upon Richard's death, Robin began acting as trustee of the Special Needs Trust pursuant to Amendment II. In September, in response to Robin acting as trustee of the Special Needs Trust, the Appellants filed a petition pursuant to Neb. Rev. Stat. § 30-3836(b) (Reissue 2016) to modify the Special Needs Trust to appoint Robert and Randall Wegener as its cotrustees. In furtherance of this request, the petition alleged that there was no proceeding commenced to approve Amendments I and II to the Special Needs Trust and the Appellants did not consent to Amendments I and II to the Special Needs Trust as required by Neb. Rev. Stat. §§ 30-3836(b) and 30-3837 (Reissue 2016). Robin objected to the petition and filed a cross-petition requesting that the court enter an order pursuant to Neb. Rev. Stat. § 30-3811 (Reissue 2016) approving Amendments I and II to the Special Needs Trust as nonjudicial settlement agreements and enter a declaratory judgment that she was the trustee, or in the alternative, modify the trust pursuant to Neb. Rev. Stat. § 30-3838(a) and (b) (Reissue 2016) by appointing her as the trustee.

The trial was held in December 2021. The court received into evidence several exhibits including the 2006 Special Needs Trust document, Amendments I and II, and the Family Settlement Agreement. During the trial, Robert testified that he was unaware of Amendments I and II to the Special Needs Trust until 2021. Although he acknowledged that Richard acted as trustee of the Special Needs Trust after Emmert's death in 2015, he believed that Richard was acting pursuant to the initial terms of the Special Needs Trust. He further testified that he signed the Family Settlement Agreement, that it referred to Amendments I and II, and that he was represented by counsel at the time that he signed the Family Settlement Agreement. He further testified that he had the opportunity to review the Family Settlement Agreement, but he did not do so. He also testified that he was Steven's financial power of attorney and "it would sure be a lot easier if we had control of his Trust if we need money instead of having to go and ask for it all the time." Randall testified that his testimony would be "the same or substantially the same" as Robert's testimony and that the purpose of the Family Settlement agreement was to dispose of the assets in Emmert and Rita's trusts. The parties stipulated that if Gerald and Mark were called as witnesses, their testimony would be substantially the same as Robert's testimony.

Following the December 2021 trial, the county court entered an order stating:

In December, [sic] 2016, Gerald, Robert, Randall, Richard and Mark all signed a Family Settlement Agreement regarding . . . Rita's Trust and Emmert's Trust. Gerald, Robert, Randall, Richard and Mark all acknowledged that Stephen's Trust had been amended on January 18, 2008 (Amendment I) and October 22, 2010 (Amendment II). They further state

that "The originals of such Trust and such Amendments will be submitted to the Court with the Petition for Trust Administration in a separate proceeding." Clearly, the intent of all the parties was that the Trust would be registered and that the Amendments be approved. The court believes there is an obligation to give effect to the settlor's intentions particularly when all other interested parties are aware of those intentions and all other interested parties indicate their desire to carry out their father's intentions.

It is important to note that the Amendments do not change the substantive terms of Stephen's Trust nor does approval of Amendment I and Amendment II affect the ultimate purpose of the trust, since the successor trustee is still governed by its terms and condition.

. . . .

The court, therefore, approves Amendments I & II to the Stephen Wegener Special Needs Trust as non-judicial settlement agreements. The court finds that Robin Wegener is the current trustee of the Stephen Wegener Special Needs Trust and is empowered and authorized to act as Trustee.

The Appellants have now appealed from that order.

## ASSIGNMENTS OF ERROR

The Appellants contend that the county court erred in approving Amendments I and II to the Special Needs Trust and in determining that Robin was the current trustee of the Special Needs Trust on the basis that the Appellants ratified the Amendments as nonjudicial settlement agreements pursuant to § 30-3811 by signing the 2016 Family Settlement Agreement. Further, in the event that this court agrees that there was no valid nonjudicial settlement agreement, the Appellants request that this court consider the following assignments of error: that the Special Needs Trust was not subject to modification pursuant to § 30-3837 which provides for the modification of noncharitable irrevocable trusts by consent where the Appellants did not consent to its modification, and to reject Robin's claim that the Special Needs Trust was subject to modification pursuant to § 30-3838 which provides for modification of a trust because of unanticipated circumstances.

## STANDARD OF REVIEW

Trust administration matters are reviewed for error appearing on the record, absent an equity question. *In re Trust Created by McGregor*, 308 Neb. 405, 954 N.W.2d 612 (2021). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

The interpretation of the words in a will or a trust present a question of law. *Id.* In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id.*

Removal of a trustee is a question of equity, and therefore an appellate court reviews the issue de novo on the record. *In re Trust Created by Fenske,* 303 Neb. 430, 930 N.W.2d 43 (2019).

ANALYSIS

The Appellants first argue that the county court erred in approving Amendments I and II of the Special Needs Trust because the Family Settlement Agreement did not operate to modify the terms of the Special Needs Trust and did not comply with Neb. Rev. Stat. § 30-3811 (Reissue 2016). More specifically, the Appellants argue that the Family Settlement Agreement was created to modify Emmert and Rita's trusts by providing for distribution of the assets of those trusts, not to modify Stephen's Special Needs Trust. Robin argues that the language contained in the Family Settlement Agreement acknowledged that the Special Needs Trust was amended twice and that her husband, Richard, was the successor trustee. She asserts that, because the Appellants agreed to this language, they cannot now argue that the Special Needs Trust was not validly amended.

Section 30-3811 of the Uniform Trust Code provides:

(a) (UTC 111) For purposes of this section, "interested persons" means persons whose consent would be required in order to achieve a binding settlement were the settlement to be approved by the court.

(b) Except as otherwise provided in subsection (c) of this section, interested persons may enter into a binding nonjudicial settlement agreement with respect to any matter involving a trust.

(c) A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under the Nebraska Uniform Trust Code or other applicable law. A spendthrift provision in the terms of the trust is presumed to constitute a material purpose of the trust.

(d) Matters that may be resolved by a nonjudicial settlement agreement include:

(1) the interpretation or construction of the terms of the trust;

. . . .

(4) the resignation or appointment of a trustee and the determination of a trustee's compensation;

. . . .

(e) Any interested person may request the court to approve a nonjudicial settlement agreement, to determine whether the representation as provided in sections 30-3822 to 30-3826 was adequate, and to determine whether the agreement contains terms and conditions the court could have properly approved.

In *In re Trust Created by McGregor*, 308 Neb. 405, 411-12, 954 N.W.2d 612, 617 (2021), the Nebraska Supreme Court stated:

Although disputes involving the administration of trusts are encouraged to be resolved through nonjudicial means, § 30-3811 of the Nebraska Uniform Trust Code, see Neb. Rev. Stat. §§ 30-3801 to 30-38,110 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019), authorizes the court to determine the validity of a nonjudicial settlement agreement according to the provisions of the code or other applicable laws.

In declining to approve the agreement, the court relied upon § 30-3811(c), which provides: "A nonjudicial settlement agreement is valid only to the extent it does not violate

a material purpose of the trust . . ." . . . The material purposes of a trust are subject to the settlor's discretion, to the extent that its purposes are lawful, are not contrary to public policy, are possible to achieve, and are for the benefit of its beneficiaries.

Here, relying upon language contained in the 2016 Family Settlement Agreement, the county court found that the Special Needs Trust had been modified as depicted in Amendments I and II by nonjudicial settlement agreement and that "the Amendments do not change the substantive terms of Stephen's [Special Needs] Trust nor does approval of Amendment I and Amendment II affect the ultimate purpose of the [Special Needs Trust], since the successor trustee is still governed by its terms and condition[s]." We agree with the county court that through the terms of the Family Settlement Agreement, which referenced Amendments I and II, the Appellants acknowledged and agreed to Amendments I and II and that the same constituted valid nonjudicial settlement agreements.

As this court summarized in *In re Trust Created by Augustin*, 27 Neb. App. 593, 640, 935 N.W.2d 493, 526 (2019):

> The NUTC provides that "interested persons may enter into a binding nonjudicial settlement agreement with respect to any matter involving a trust" so long as "it does not violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under the [NUTC] or other applicable law." § 30-3811(b) and (c). . . . Any interested person can request the court to approve such an agreement and "determine whether the agreement contains terms and conditions the court could have properly approved," § 30-3811(e) . . . .

Here, Robin requested that the county court approve an agreement of the interested parties to the Special Needs Trust. The purported agreement was to the terms of Amendments I and II to the Special Needs Trust, which contained the signatures of Emmert and/or Richard, but not the signatures of Gerald, Robert, Randall, or Mark. Robin argued that when all five brothers signed the 2016 Family Settlement Agreement, their signatures served as a ratification to the terms of Amendments I and II and the court should approve Amendments I and II as nonjudicial settlement agreements and declare her as the current trustee of the Special Needs Trust. The county court agreed. The Appellants assign error to that determination arguing the 2016 Family Settlement Agreement had a different purpose than to serve as an agreement governing the Special Needs Trust; that the noncontemporaneous nature of the signatures should bar application of the Agreement; and that enforcement should be deemed invalid because the Agreement violated a material purpose of the trust. We will address these arguments independently.

The Appellants first argue that the purpose of the 2016 Family Settlement Agreement was to amend Emmert and Rita's trusts and not the Special Needs Trust. They argue that, by finding that the 2016 Family Settlement Agreement served to ratify the terms of Amendments I and II, the court misinterpreted its purpose. We disagree. Although the primary purpose of the 2016 Family Settlement Agreement was to approve a restructuring of Emmert and Rita's trusts, in order to do so, they needed to obtain the consent of the trustee of the Special Needs Trust. In order to grant authority to the trustee of the Special Needs Trust to execute the 2016 Family Settlement Agreement, the parties unambiguously represented their consent to the prior 2008 and 2010

Amendments to the Special Needs Trust to empower Richard to sign the Family Settlement Agreement on behalf of the Special Needs Trust and effect a distribution of assets from Emmert and Rita's trust in the manner agreed upon by the parties. In strict reliance on that representation, the court then approved the Family Settlement Agreement and the assets of Emmert and Rita's trusts were distributed as provided in that agreement. The Appellants cannot now argue that, although they approved Amendments I and II when it benefited them in 2016, they now want to disavow Amendments I and II. Nor are we persuaded that the court should not give effect to the clear language contained in the Family Settlement Agreement in which the Appellants consented to the terms of Amendments I and II because they failed to read the language of the Family Settlement Agreement. "Generally, in the absence of fraud, one who signs an instrument without reading it, when one can read and has had the opportunity to do so, cannot avoid the effect of one's signature merely because one was not informed of the contents of the instrument." *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 229, 912 N.W.2d 774, 791-92 (2018).

Next, the Appellants argue that, because the Family Settlement Agreement and Amendments I and II were not executed contemporaneously, the county court should not have construed the 2016 Family Settlement Agreement as a valid ratification of Amendments I and II. We reject that argument. There is nothing in § 30-3811 which provides a timeframe in which a nonjudicial settlement agreement must be executed. Although we recognize the unusual nature of the nonjudicial settlement agreement here, that is that proposed Amendments I and II, which were drafted in 2008 and 2010, were not contemporaneously executed by all interested parties, we do not find that fatal to the agreement. Where, as here, all of the interested parties either signed the original Amendments or subsequently ratified them, we reject the Appellants' claim that the timing of execution impacts its validity.

Finally, the Appellants argue that the proposed nonjudicial settlement agreements are unenforceable under § 30-3811(c) because they violate a material purpose of the Special Needs Trust. Whether the substitution of a new trustee violates a material purpose of the trust was the subject of the Nebraska Supreme Court's analysis in *In re Trust Created by Fenske*, 303 Neb. 430, 930 N.W.2d 43 (2019), albeit as it related to a court's role in removing a trustee. After reviewing commentary associated with the definition of "material purpose," and whether changing a trustee might constitute one, the court held:

> We understand the commentary set forth above to indicate that the question whether the proposed replacement of a trustee is inconsistent with a material purpose of the trust depends on the significance to the settlor of the initial choice of trustee. For example, there may be cases in which there is no indication that the particular trustee or the qualities that trustee brought to the assignment were an important consideration for the settlor. In those types of cases—where the current trustee is merely an incidental means to accomplish ends—removal would not be inconsistent with a material purpose.

*Id.* at 440, 930 N.W.2d at 49.

In this case, Emmert's intentions, as Settlor of the Special Needs Trust, were clear because he executed Amendments I and II prior to his death. And, in reliance on the Appellants' representations contained in the Family Settlement Agreement, the court entered a previous order which allowed for the distribution of assets contained in Emmert and Rita's trusts. In formulating

this order, the court relied upon the representations contained in the Family Settlement Agreement that Amendments I and II to the Special Needs Trust were valid and Richard had the authority to bind the Special Needs Trust. On these limited facts, we agree the county court did not err in finding that Amendments I and II did not violate a material purpose of the Special Needs Trust. Accordingly, we find that the county court did not err in enforcing the terms of Amendments I and II to the Special Needs Trust, when considered with the terms of the 2016 Family Settlement Agreement, as valid nonjudicial settlement agreements. This assignment fails.

The Appellants further assigned as error that the Special Needs Trust was not subject to modification pursuant to § 30-3837 which provides for the modification of noncharitable irrevocable trusts by consent where the Appellants did not consent to its modification, and that the Special Needs Trust was not subject to modification pursuant to § 30-3838 which provides for modification of a trust due to unanticipated circumstances. The Appellants acknowledge in their brief that they make this assignment and argument in the event this court finds there was no valid nonjudicial settlement agreement. However, since we have determined that the county court properly found that the Appellants approved Amendments I and II by signing the 2016 settlement agreement which were nonjudicial settlement agreements under § 30-3811, we need not consider the Appellants' remaining assignments of error. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. *Kozal v. Snyder*, 312 Neb. 208, 978 N.W.2d 174 (2022).

CONCLUSION

For the reasons set forth herein, we affirm the county court's order.

AFFIRMED.