Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/08/2022 09:08 AM CDT

Cindy Svoboda, Personal Representative of
the Estate of Blain Larson, appellee,
v. Matthew Larson, appellant.

___ N.W.2d ___

Filed April 15, 2022.    No. S-21-290.

1. **Guardians and Conservators: Judgments: Appeal and Error.** Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. When reviewing a judgment for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Decedents' Estates: Attorney Fees.** Ordinarily, the fixing of reasonable compensation, fees, and expenses, pursuant to Neb. Rev. Stat. § 30-2480 (Reissue 2016), governing compensation of personal representatives; Neb. Rev. Stat. § 30-2481 (Reissue 2016), governing expenses in estate litigation; and Neb. Rev. Stat. § 30-2482 (Reissue 2016), governing compensation of personal representatives and employees of the estate, is within the sound discretion of the county court.

3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

4. **Wills: Trusts.** The interpretation of the words in a will or a trust presents a question of law.

5. **Judgments: Appeal and Error.** In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.

6. **Decedents' Estates: Taxation.** The inheritance tax is a tax on the beneficiary, not the decedent.

7. **Decedents' Estates: Taxation: Wills.** The burden of inheritance taxes will be imposed upon the individual beneficiaries of the decedent in accordance with the statutory pattern unless there is a clear and unambiguous direction to the contrary in the will or other governing instrument.

8. **Decedents' Estates: Taxation.** Generally, the fiduciary charged with distributing a decedent's property deducts the inheritance taxes from any property distributed or collects the tax from the legatee or the person entitled to such property.

9. **Decedents' Estates: Taxation: Wills: Intent.** A testator who wants to shift the burden of the inheritance tax may employ any word or combination of words that the testator desires, and a few simple words might be enough to show his or her intent. But the direction in the will must be clear and unambiguous in order to supplant the statutory pattern. Any ambiguities are resolved in favor of the statutory pattern.

10. **Decedents' Estates: Taxation: Wills.** Where a will directs that taxes be paid out of the residuary estate but there is no residuary estate—that is, nothing is left over and above preresiduary legacies and devises after paying debts and funeral and administration expenses—the ordinary result is that the direction must fail; and the burden of the taxes falls where the law places such burden in the absence of a tax clause, unless the testator has made provision for such a contingency.

11. **Decedents' Estates: Actions: Attorney Fees.** If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he or she is entitled to receive from the estate his or her necessary expenses and disbursements, including reasonable attorney fees incurred.

12. ____: ____: ____. A person seeking to recover fees under Neb. Rev. Stat. § 30-2481 (Reissue 2016) must first establish good faith, and then prove (1) that the claimed expenses and disbursements were necessary and (2) that the attorney fees were necessary and reasonable.

13. ____: ____: ____. The good faith required in Neb. Rev. Stat. § 30-2481 (Reissue 2016) is an ultimate fact for the court's decision upon all of the evidence.

14. **Decedents' Estates: Words and Phrases.** There are no rules defining good faith; rather, it depends upon the peculiar facts and circumstances existing in each case, including the duties imposed upon him or her by law.

15. **Decedents' Estates: Costs: Attorney Fees: Words and Phrases.** Good faith, for the purpose of Neb. Rev. Stat. § 30-2481 (Reissue 2016), is honesty in fact concerning conduct or a transaction.

Appeal from the County Court for Colfax County: Andrew R. Lange, Judge. Affirmed in part, and in part reversed and remanded with directions.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellant.

Jeffery T. Peetz and Blake K. Simpson, of Endacott, Peetz, Timmer & Koerwitz, P.C., L.L.O., for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Piccolo, District Judge.

Funke, J.

## INTRODUCTION

The county court for Colfax County, Nebraska, approved the schedule of distribution for the estate of Blain Larson, filed by Blain's personal representative. The court overruled the objections of a devisee, and the devisee appeals. We conclude that the court erred in charging inheritance tax to the estate. The appeal is otherwise without merit. We therefore affirm in part, and in part reverse and remand with directions.

## BACKGROUND

### Will

Blain's will nominated Cindy Svoboda (Cindy) as personal representative. Cindy and Blain cohabitated from 2008 until Blain died on February 19, 2017, at age 63. The will devised to Cindy one-half of Blain's livestock and one-half of the ownership of his pharmacy business. To Matthew Larson, Blain's son from a former marriage, the will devised one-half of the livestock, one-half of the pharmacy business, a pontoon, a fishing boat, sport utility vehicles, and certain personal property. The will devised the residue of his estate to Cindy. There was no devise for Blain's daughter, Amber Fixemer (Amber).

Of central relevance, Blain's will contained the following provision concerning the payment of debts and estate expenses:

> My Personal Representative shall pay from the residue of my estate all my debts, funeral expenses, administration expenses and all estate, inheritance, succession and

transfer taxes imposed by the United States or any state, territory or possession which shall become payable by reason of my death. It shall not be necessary to file any claims therefor, nor to have them allowed by any court.

## Will Contest

In March 2017, Cindy initiated informal probate proceedings in the county court and was appointed Blain's personal representative. Matthew and Amber subsequently filed a petition to prevent informal probate, seeking an order that Blain died intestate based on the allegations that he lacked sufficient capacity to execute his will and that the will was invalid due to undue influence, fraud, and duress. Cindy denied the allegations. The matter moved to district court, where the court entered judgment on a jury verdict in favor of Cindy. In addition, the court found Matthew and Amber had filed their appeal "'vexatiously or for delay'" and consequently awarded Cindy $2,871.70 in costs.

## Matthew's Objection

The matter returned to county court, where Cindy filed a formal petition for complete settlement after the informal testate proceeding, along with a schedule of distribution. Pursuant to Neb. Rev. Stat. §§ 30-2480 and 30-2481 (Reissue 2016), the petition sought approval of Cindy's final accounting and the fees and expenses she had incurred as personal representative. Cindy's petition specifically requested "[a]pproving distributions previously made and authorizing and directing [Cindy] to distribute the assets and the Final Accounting of the Estate to the Distributees in accordance with the annexed Schedule of Distribution."

Cindy's schedule of distribution allotted to Matthew a half interest in the proceeds from the sale of pharmacy stock, 26 cows, recreational vehicles, personal property, and taxes. To Cindy, the schedule allotted a half interest in the proceeds from the sale of pharmacy stock, 26 cows, taxes, and the balance of the residuary estate after payment of taxes, debts, and

administration expenses. Some estate items had already been distributed in kind. Cindy's tentative inheritance tax totaled $224,249, whereas Matthew's totaled $7,190.

Cindy's final accounting showed that $545,029.98 remained in the estate account after payment of tentative inheritance taxes and administration expenses, including attorney fees incurred in defending the will contest, property taxes, and half the cost of a headstone. The court refunded $16,387 for overpayment of inheritance taxes and assessed inheritance taxes due in the amount of $208,758 against Cindy and $6,294 against Matthew.

On March 6, 2020, pursuant to Neb. Rev. Stat. § 30-24,104(b) (Reissue 2016), Matthew filed an objection to Cindy's proposal for distribution, alleging that she failed to properly apportion inheritance taxes once the residue had been exhausted and that each beneficiary should be responsible for his or her own inheritance tax. Matthew further alleged that Cindy, as personal representative, incurred unnecessary and unreasonable expenses and that estate funds should not be used to pay Cindy's attorney fees.

## Hearing

At a hearing on Matthew's objection, the court heard evidence regarding attorney fees Cindy incurred as personal representative while defending the will contest. Cindy testified that she defended the will to carry out Blain's wishes and denied that her primary purpose was to enhance her prospects of compensation under the will or that her efforts had that effect. She denied defending the will to amass personal representative fees, stating that she attempted resolutions through mediation and summary judgment. Cindy did admit that in the event she lost the will contest, she would not inherit any probate assets.

The county court received affidavits from Cindy's counsel and independent local counsel regarding the attorney fees paid by the estate. An affidavit from one of Cindy's attorneys provided a detailed list of charges, while the other two

attorneys stated that the attorney fees incurred in defending the will contest were reasonable and necessary considering the various legal issues raised.

Matthew disputed Cindy's use of estate funds to pay real estate taxes. Cindy testified she used funds from the estate account to pay half of the real estate taxes on the house she owned jointly with Blain until his death. Cindy explained that the real estate taxes she paid were for 2016, when Blain was alive, and that paying the real estate taxes kept the property clear of any liens. Cindy considered this part of her duty as personal representative to preserve the property and avoid incurring additional expenses.

Matthew contested Cindy's use of estate funds to purchase a headstone for Blain. Cindy testified that in July 2017, Blain's mother was concerned that there was no headstone marking Blain's grave. As a result, Cindy ordered a headstone in August 2017, using estate funds to pay half the cost. In January 2018, Cindy learned that Matthew and Amber had also purchased a headstone, but did not present the estate with a bill. The headstone purchased by Matthew and Amber was ultimately placed on Blain's grave, and the headstone purchased by Cindy was placed on her adjacent plot. Cindy testified that based upon Neb. Rev. Stat. § 30-2223 (Reissue 2016), she understood that a personal representative may use estate funds to pay for a headstone, such as the one she purchased. Cindy testified that Matthew and Amber did not timely exercise their rights as to payment of the headstone.

## Court Order

In April 2020, the court entered an order dismissing Matthew's objection to Cindy's proposal for distribution. The court determined that the attorney fees Cindy incurred as personal representative were for the primary purpose of defending Blain's will. The court found no evidence that Cindy did not defend the will in good faith. The court reasoned that the fact that Cindy would receive a greater share of the probate

assets did not indicate a lack of good faith. Based on the affidavits from counsel, the court found the attorney fees and estate expenses incurred by Cindy as personal representative were reasonable and necessary.

As to the disputed administration expenses and inheritance taxes, the court found that the will directed such to be paid from the residue. However, because Blain's estate had minimal residuary value, the court found the apportionment provisions under Neb. Rev. Stat. § 30-24,100 (Reissue 2016) controlled. The court determined nonprobate assets were unavailable to pay inheritance taxes, because Matthew had not made a timely demand upon the personal representative under Neb. Rev. Stat. § 30-24,120 (Reissue 2016). The court determined that under § 30-24,100, "the inheritance taxes should be paid from the estate and to the extent the residuary estate is unavailable for payment of these expenses, the specific devisees [sic] in proportion to the share owned by Cindy . . . and Matthew . . . should be reduced for such estate expenses and inheritance tax."

Cindy filed a supplemental final accounting applying the court's order, which accounting stated that the parties had agreed to apportion administration expenses, funeral expenses, debts, taxes, and claims of 49.4 percent to Cindy and 50.6 percent to Matthew. Deducting for proportionate shares, the accounting set forth the final distribution to Matthew and Cindy.

Matthew appeals. We granted Matthew's request for bypass.

## ASSIGNMENTS OF ERROR

Matthew assigns, summarized and restated, that the county court erred in (1) charging inheritance taxes to the estate, (2) charging real estate taxes to the estate, (3) charging attorney fees incurred by the personal representative to the estate, (4) charging a headstone to the estate, (5) misapplying the rules of abatement and apportionment, and (6) determining that § 30-24,120 applied to the case.

## STANDARD OF REVIEW

[1] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record.[1] When reviewing a judgment for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[2]

[2] Ordinarily, the fixing of reasonable compensation, fees, and expenses, pursuant to § 30-2480, governing compensation of personal representatives; § 30-2481, governing expenses in estate litigation; and Neb. Rev. Stat. § 30-2482 (Reissue 2016), governing compensation of personal representatives and employees of the estate, is within the sound discretion of the county court.[3]

[3] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[4]

[4,5] The interpretation of the words in a will or a trust presents a question of law.[5] In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.[6]

## ANALYSIS

### INHERITANCE TAXES

The first issue for determination is whether inheritance taxes may be charged to the estate, where the will directs that inheritance taxes be charged to the residue, but the residue lacks sufficient assets. This is a novel issue under Nebraska law.

---

[1] *In re Estate of Hutton*, 306 Neb. 579, 946 N.W.2d 669 (2020).

[2] *Id.*

[3] *Id.*; *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018); *In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800 (1985).

[4] *In re Estate of Hutton, supra* note 1.

[5] *In re Estate of Akerson*, 309 Neb. 470, 960 N.W.2d 719 (2021).

[6] *In re Trust Created by McGregor*, 308 Neb. 405, 954 N.W.2d 612 (2021).

[6-8] Chapter 77, article 20, of the Nebraska Revised Statutes imposes inheritance taxes on a beneficiary's distribution based on the beneficiary's relationship to the decedent.[7] The inheritance tax is a tax on the beneficiary, not the decedent.[8] The burden of inheritance taxes will be imposed upon the individual beneficiaries of the decedent in accordance with the statutory pattern unless there is a clear and unambiguous direction to the contrary in the will or other governing instrument.[9] Generally, the fiduciary charged with distributing a decedent's property deducts the inheritance taxes from any property distributed or collects the tax from the legatee or the person entitled to such property.[10]

[9] A testator who wants to shift the burden of the inheritance tax may employ any word or combination of words that the testator desires, and a few simple words might be enough to show his or her intent.[11] But the direction in the will must be clear and unambiguous in order to supplant the statutory pattern.[12] Any ambiguities are resolved in favor of the statutory pattern.[13]

Recall the relevant language found in Blain's will: "My Personal Representative shall pay *from the residue of my estate* all my debts, funeral expenses, administration expenses and all estate, inheritance, succession and transfer taxes . . . which shall become payable by reason of my death." (Emphasis supplied.)

---

[7] Neb. Rev. Stat. §§ 77-2004 and 77-2005 (Reissue 2018); *In re Estate of Shell*, 290 Neb. 791, 862 N.W.2d 276 (2015), citing *Nielsen v. Sidner*, 191 Neb. 324, 215 N.W.2d 86 (1974).

[8] *In re Estate of Shell, supra* note 7.

[9] *Nielsen v. Sidner, supra* note 7.

[10] See Neb. Rev. Stat. § 77-2011 (Reissue 2018).

[11] *In re Estate of Shell, supra* note 7.

[12] *Id.*; 42 Am. Jur. 2d *Inheritance, Estate, and Gift Taxes* § 157 (2020).

[13] *Id*.

Here, the parties do not dispute that Blain's will displaced the default statutory rule which places the inheritance tax burden on the individual receiving the bequest. Because the issue of Blain's intent as shown by his will is not contested, the next task is to determine the consequences of the fact that the residue lacked sufficient assets to carry out Blain's intent.

The county court approved Cindy's charging of inheritance taxes to the estate based upon this court's decision in *In re Estate of Shell.*[14] However, *In re Estate of Shell* is not determinative, because the issue in that case was a question of the testator's intent, and in this case, Blain's intent is uncontroverted. *In re Estate of Shell* does not address what should result when the testator's intent regarding inheritance taxes cannot be carried out due to insufficient assets.

The record shows that the residue of Blain's estate held minimal assets and was depleted through the payment of Blain's administrative expenses, funeral expenses, and federal income taxes. As such, there was insufficient residue to pay the inheritance taxes assessed against Matthew and Cindy.

[10] Where a will directs that taxes be paid out of the residuary estate but there is no residuary estate—that is, nothing is left over and above preresiduary legacies and devises after paying debts and funeral and administration expenses—the ordinary result is that the direction must fail; and the burden of the taxes falls where the law places such burden in the absence of a tax clause, unless the testator has made provision for such a contingency.[15] Thus, each legacy or devise bears its own inheritance tax,[16] and the administrative expenses and estate taxes are apportioned under the apportionment statutes.[17]

---

[14] *In re Estate of Shell, supra* note 7.

[15] Annot., 69 A.L.R.3d 122 § 43[a] (1976). See, also, *First National Bank of Omaha v. United States*, 490 F.2d 1054 (8th Cir. 1974).

[16] See § 77-2011.

[17] See §§ 77-2004 and 77-2005.

In *Rosen v. Wells Fargo Bank Texas, N.A.*,[18] the Texas Court of Appeals held that consistent with the rule followed by a majority of states, the lack of a residuary estate negates the testator's specific directions for payment of taxes, and that as a consequence, the statutory default rule controls.[19] The court reasoned that to hold otherwise would give effect to a provision in the will that failed of its purpose.[20]

We now hold that where a will directs that the inheritance taxes should be paid out of the residuary estate, but there is no residuary estate or the residuary estate is insufficient to pay the inheritance taxes, the direction in the will fails. As such, the payment of inheritance taxes reverts to the default statutory rule placing the burden on the individual beneficiaries receiving the property.

Here, despite the provisions of Blain's will, the lack of a residuary estate requires reversion to the default rule. The court erred by overruling Matthew's objection in that regard. The court's order is in part reversed and the cause is remanded with directions to require Matthew and Cindy to each pay their respective inheritance taxes owed in this matter according to the statutory default rule.

### Real Estate Taxes

Matthew argues that like inheritance taxes, real estate taxes should not have been charged to the estate.

The record sets forth that Blain and Cindy jointly owned real estate. Following Blain's death, his one-half share of 2016 real estate taxes were due and owing. The owner of real property on December 31 is liable for the taxes assessed and levied for that calendar year, and that real property tax liability rests

---

[18] *Rosen v. Wells Fargo Bank Texas, N.A.*, 114 S.W.3d 145 (Tex. App. 2003).

[19] See *id*. (citing cases). But see *Stickley v. Stickley*, 255 Va. 405, 497 S.E.2d 862 (1998).

[20] *Rosen, supra* note 18.

with the owner or owners of the real property at the time real property taxes are charged, accrued, or assessed, i.e., due and payable.[21] Cindy paid Blain's half of the real estate taxes from estate assets and paid her half of the real estate taxes using her personal funds.

Blain's will directed the personal representative to pay from the residue of his estate all of his debts. The will further waived the requirement that a claim be filed before such payments would be allowed by the court. As such, Cindy correctly treated Blain's share of the 2016 real estate taxes as a predeath debt of the decedent to be paid by the estate. This assignment of error is without merit.

## Attorney Fees

Matthew argues that the court erred in determining that Cindy defended the will in good faith. Matthew contends that by defending the will contest, Cindy was merely attempting to protect her bequest under the will.

[11,12] If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he or she is entitled to receive from the estate his or her necessary expenses and disbursements, including reasonable attorney fees incurred.[22] We have held that "a person seeking to recover fees under § 30-2481 'must first establish good faith, and then prove (1) that the claimed expenses and disbursements were necessary and (2) that the attorney fees were necessary and reasonable.'"[23] The county court's determination of reasonable compensation for a personal representative is reviewed for an abuse of discretion.[24]

---

[21] See, *In re Estate of Karmazin*, 299 Neb. 315, 908 N.W.2d 381 (2018); Restatement (Third) of Property § 1.1 (1999).

[22] § 30-2481.

[23] *In re Estate of Giventer*, 310 Neb. 39, 57, 964 N.W.2d 234, 246 (2021).

[24] *In re Estate of Hutton, supra* note 1; *In re Estate of Graham, supra* note 3; *In re Estate of Odineal, supra* note 3.

[13-15] The good faith required in § 30-2481 is an ultimate fact for the court's decision upon all of the evidence.[25] There are no rules defining it; rather, it depends upon the peculiar facts and circumstances existing in each case, including the duties imposed upon him or her by law.[26] "'Good faith,' for the purpose of § 30-2481, is honesty in fact concerning conduct or a transaction."[27]

Here, Matthew does not quarrel with the issue of whether the attorney fees were reasonable. Instead, Matthew asserts that Cindy defended the will contest for the primary purpose of enhancing her prospects of compensation and that therefore, she was not acting in good faith. To support his position, Matthew directs us to a comment to the Uniform Probate Code, which states that "[l]itigation prosecuted by a personal representative for the primary purpose of enhancing his prospects for compensation would not be in good faith."[28]

However, Matthew has offered no evidence to support his contention that Cindy failed to act in good faith, and the county court specifically found that "[n]o evidence was offered to support the position that [Cindy] did not defend the will in good faith." Indeed, the record shows Cindy defended the will against vexatious litigation pursued by Matthew and Amber and to preserve Blain's wishes as edified by his will. Cindy's defense of the will was not primarily to increase her compensation.[29]

As previously mentioned, the good faith required in § 30-2481 is an ultimate fact for the court's decision upon all of the evidence and we review that decision for an abuse of discretion. Based upon the record before us, we find no abuse of discretion. This assignment of error is without merit.

---

[25] *In re Estate of Odineal, supra* note 3.

[26] *Id.*

[27] *In re Estate of Watkins*, 243 Neb. 583, 590, 501 N.W.2d 292, 296 (1993).

[28] Unif. Probate Code § 3-720, comment, 8 (part II) U.L.A. 228 (2013).

[29] See Neb. Rev. Stat. § 30-2464(a) (Reissue 2016).

## Headstone

Matthew argues charging a headstone to the estate was not in the best interests of the successors to the estate. There is no merit to this argument.

Section 30-2223 sets out the order of persons having the right to control the arrangements for funeral goods. Under that statute, in the absence of specific direction from Blain's will, Matthew and Amber—as his surviving children—had priority to control the purchase of his headstone. However, if Matthew and Amber failed to act, authority shifted to Cindy as Blain's personal representative.

As of July or August 2017, no headstone had been purchased for Blain's grave. At the request of Blain's mother, Cindy bought a headstone. At the time, Cindy was unaware that Matthew and Amber had purchased a headstone, which they later set upon the grave. Matthew and Amber did not bill the estate for the headstone.

The court accepted Cindy's testimony that Cindy's payment of the headstone was appropriate and necessary to carry out her duties as personal representative. We find no abuse of discretion by the county court.[30]

## Matthew's Remaining Assignments

Matthew argues that the court incorrectly applied § 30-24,120, which states:

> Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or otherwise barred, the claim of any claimant to recover from a distributee who is liable to pay the claim, and the right of any heir or devisee, or of a successor personal representative acting in their behalf, to recover property improperly distributed or the value thereof from any distributee is forever barred at the

---

[30] See *In re Estate of Hutton, supra* note 1. See, also, *In re Estate of Bullion*, 87 Neb. 700, 128 N.W. 32 (1910).

later of (1) three years after the decedent's death; or (2) one year after the time of distribution thereof. This section does not bar an action to recover property or value received as the result of fraud.

Here, Cindy filed a petition for settlement and distribution on February 7, 2020. Matthew filed an objection on March 6, pursuant to § 30-24,104(b), which provides a distributee the right to object to a proposed distribution within 30 days of receiving the proposal. Matthew sought relief under § 30-24,100 and specifically requested that each party pay his or her own inheritance tax.

The county court found Matthew's objection untimely, stating in part that Matthew did not object within 3 years of Blain's death. However, Matthew sought no relief under § 30-24,120. Further, Matthew is not a claimant seeking to recover property improperly distributed. At argument before this court, Cindy did not contend that Matthew's objection regarding the payment of inheritance taxes was untimely, but instead candidly agreed that if Matthew's argument regarding inheritance taxes has merit then a remand would be appropriate. The court erred by finding this aspect of Matthew's objection untimely. However, any such error is without consequence as Matthew sought no relief under § 30-24,120.

Lastly, Matthew contends that the court misapplied the rules of abatement and apportionment. Abatement is set out in § 30-24,100, which provides in relevant part as follows:

(a) . . . [S]hares of distributees abate, without any preference or priority as between real and personal property, in the following order: (1) property not disposed of by the will; (2) residuary devises; (3) general devises; (4) specific devises. . . . Abatement within each classification is in proportion to the amounts of property each of the beneficiaries would have received if full distribution of the property had been made in accordance with the terms of the will.

Here, Blain's will devised all of his assets. Namely, Blain specifically devised assets to Matthew and Cindy and devised the residue of the estate to Cindy. The will also directed that the residual estate be used to satisfy all his debts, funeral expenses, administration expenses, and estate, inheritance, succession, and transfer taxes which became payable by reason of his death. As previously discussed, payment of Blain's administrative expenses, funeral expenses, and federal income taxes exhausted his residual estate. As such, under § 30-24,100, with the exception of inheritance taxes, after exhaustion of the residue of the estate, all remaining debts, funeral expenses, administration expenses, and estate, succession, and transfer taxes which became payable by reason of Blain's death would be paid by the abatement of the specific devises in proportion to the amount each of the beneficiaries would have received if full distribution had been made under the terms of the will.

The parties agreed that Matthew was devised 50.6 percent of the property specifically devised by Blain's will and that Cindy was devised 49.4 percent. Therefore, after exhaustion of the residue of the estate, the specific devises to Matthew and Cindy should have been abated 50.6 to Matthew and 49.4 to Cindy. According to Cindy's inheritance tax worksheet filed with the court, Cindy apportioned the debts, funeral expenses, and administration expenses 50 percent to herself and 50 percent to Matthew. So, in actuality, Cindy abated her devise at a rate higher than she was required to do under the statute. As such, this assignment of error is without merit.

## CONCLUSION

The court's order is in part reversed and the cause must be and is hereby remanded with directions to require Matthew and Cindy to each pay their respective inheritance taxes owed in this matter according to Nebraska law.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HEAVICAN, C.J., not participating.