Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/21/2022 09:06 AM CDT

In re Guardianship of Jill G.,
an incapacitated person.
Debra R., appellant, v. Jill G., appellee.

___ N.W.2d ___

Filed July 29, 2022.    No. S-21-586.

1. **Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
4. **Guardians Ad Litem: Words and Phrases.** Neb. Rev. Stat. § 30-4204 (Reissue 2016) empowers the guardian ad litem to obtain information as part of his or her investigation and permits for the admissibility of information so collected. By its plain terms, § 30-4204 addresses "material obtained by a guardian ad litem" and does not pertain to a report created by a guardian ad litem.
5. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
6. **Statutes: Intent.** When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context.
7. **Statutes: Words and Phrases.** The placement of a statutory word proximate to a provision which it describes informs our interpretation of the statute.
8. **Trial: Evidence.** When part of an exhibit is inadmissible, a trial court has discretion to reject the exhibit entirely or to admit the admissible portion.

9. **Trial: Evidence: Appeal and Error.** Because it is the proponent's responsibility to separate the admissible and inadmissible parts when offering evidence, an appellate court will ordinarily uphold a court's exclusion of an exhibit if the proponent did not properly limit its offer to the part or parts that are admissible.

Appeal from the County Court for Douglas County: Marcena M. Hendrix, Judge. Affirmed.

Andrew Schill, of Legal Aid of Nebraska, for appellant.

James Walter Crampton for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

### NATURE OF CASE

Debra R., the appellant, sought to have the Office of Public Guardian appointed as guardian over her daughter, Jill G., the appellee. The county court for Douglas County ultimately dismissed the petition for appointment of a guardian without prejudice. Debra appeals. She contends that a report created by the guardian ad item (GAL) pursuant to Neb. Rev. Stat. § 30-4205 (Reissue 2016) should have been admitted into evidence and that in combination with the testimony of the GAL, the evidence would support creation of a guardianship over Jill. We conclude that exclusion of the report was not error and accordingly affirm.

### STATEMENT OF FACTS

Jill is the alleged incapacitated person in this matter. In August 2019, Jill was arrested for trespassing and destroying property in a church. She remained in the Douglas County jail until August 2020, when she was released to a recovery center. Thereafter, Debra petitioned to have the Office of Public Guardian appointed as guardian over Jill. The county court appointed Debra as temporary guardian and appointed a GAL and separate counsel for Jill.

On May 17, 2021, the GAL filed a notice of availability of a report (sometimes referred to herein as "the GAL report"). The GAL report at the center of this appeal consisted of eight pages and was supported by an affidavit. Attached to the report were approximately 80 pages of information and material obtained by the GAL pursuant to Neb. Rev. Stat. § 30-4204 (Reissue 2016) regarding, inter alia, Jill's medical history. Trial was held on June 15.

At trial, Debra testified to Jill's medical history and diagnoses. She described a cycle of Jill's taking medications, improving, ceasing medication, and then returning to a medical facility.

The GAL testified that she conducted an investigation of Jill, which included phone conversations with Jill; a document review, including over 80 pages of medical records; and a report from Jill's medical provider concerning the seven areas relevant to a guardianship. The GAL testified that, based on her investigation summarized in her report, she recommended Jill have a guardian. She stated that the written eight-page GAL report was her business record of her investigation and that it was supported by an affidavit. At several points during the hearing, Debra offered the GAL report, including the attached informational documents as evidence, but each time, the court sustained Jill's objections on the basis that the statements were hearsay and lacked foundation. The court also declined to take judicial notice of the GAL report. At no time did Debra offer the GAL report and informational material attached thereto separately.

Jill testified at trial that she did not want to have a guardianship. She testified that a previous guardianship had been dismissed in early 2018 and that she was taking medications daily. She testified she was living in the home of her deceased aunt and fixing up the house. Her father paid for utilities and gave her a vehicle. She testified that she would continue to take care of herself without a guardian.

On June 15, 2021, the county court entered a journal entry that granted Jill's motion to dismiss because Debra had failed to make a prima facie case for appointment of a permanent guardian.

## ASSIGNMENTS OF ERROR

Debra assigns, summarized and restated, that the county court erred when it failed to admit the GAL report into evidence and when it dismissed her petition for appointment of a guardian for Jill.

## STANDARDS OF REVIEW

[1,2] An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 949 N.W.2d 496 (2020). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

[3] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. *In re Estate of Larson*, 311 Neb. 352, 972 N.W.2d 891 (2022).

## ANALYSIS

Debra argues that the GAL report was improperly excluded from evidence, because the GAL statutes revised in 2016 show "clear intent of allowing both the report of the GAL and the fruits of the GAL's investigation into evidence." Brief for appellant at 11. Debra contends that by statute, the county court was obligated to admit the GAL report for the purpose of evaluating the question of creating a guardianship, and that the report was material. We conclude that the county court correctly analyzed the GAL report as inadmissible hearsay, and thus, we affirm.

Several relevant statutes, including the GAL statutes amended in 2016, Neb. Rev. Stat. §§ 30-4201 to 30-4210 (Reissue 2016), control our analysis. Consistent with §§ 30-4201 to 30-4210, in a guardianship proceeding, the court may appoint a GAL to

advocate for the best interests of the person alleged to be incapacitated. Neb. Rev. Stat. § 30-2619(b) (Reissue 2016). A GAL appointed pursuant to the Nebraska Probate Code must be an attorney in good standing admitted to the practice of law in the State of Nebraska and meet any other requirements, including training, imposed by the Supreme Court. See § 30-4202(1). Regarding its 2016 amendments, the Legislature explained as follows:

> The Legislature finds that it is in the best interests of persons under disability and the public for the authorities and responsibilities of a [GAL] to be expanded to include an objective investigation and assessment of the needs of a person who comes before the court in any guardianship, conservatorship, or other protective proceeding to ensure the protection of the rights of the person who is the subject of the proceeding. The Legislature also finds that the public is benefited from having trustworthy and competent guardians and conservators appointed for incapacitated persons, wards, protected persons, and minors.

§ 30-4201. To this end, the Legislature set forth various expanded duties and powers of a GAL. With respect to the evidentiary issue in this case, a GAL is required to, inter alia, investigate, gather information regarding, and make an assessment of the condition of the person for whom he or she has been appointed to represent and report to the court the condition of such person. See § 30-4203(1)(b). The written report addresses whether the person for whom the guardianship is sought is an incapacitated person, and it further addresses the scope of a limited guardianship or why a full guardianship is necessary to protect the best interests of the incapacitated person. See § 30-4205.

Section 30-4204 provides the statutory authority for the GAL to obtain certain information, informally or by subpoena, about the person for whom the GAL has been appointed, including "report[s] from any medical provider, provider of psychological services, law enforcement, adult protective services agency, or financial institution; and . . . any account or

record of any business, corporation, partnership, or other business entity which such person owns or in which such person has an interest." Of particular interest in this appeal is the concluding provision in § 30-4204, which states that "[*a*]*ny material obtained by a* [*GAL*] pursuant to this section *is admissible in evidence*." (Emphasis supplied.) Debra relies primarily on this provision of § 30-4204 pertaining to gathered materials as the basis of her claim that the GAL report which the GAL authored should have been admitted into evidence. We do not agree with Debra's reading of the statute.

Historically, in other contexts, we have observed that GAL reports are hearsay and, whether in written form or testimony by the GAL, are subject to the rules of evidence. We have stated that "'a report is not somehow made admissible because it was prepared by a [GAL] appointed by a court pursuant to a statute.'" *Betz v. Betz*, 254 Neb. 341, 347, 575 N.W.2d 406, 410 (1998). We have applied the principle that in the absence of admissibility authorized by the Nebraska Evidence Rules or by other statute as a nonhearsay statement or statements otherwise exempted or excluded from the operation or purview of the "hearsay rule," Neb. Rev. Stat. § 27-802 (Reissue 2016), a hearsay statement will be excluded. See, generally, *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). See, also, *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004).

[4-7] Debra contends that the GAL statutes set forth above create a statutory exception to the rules of evidence, rendering the GAL report admissible into evidence. We do not agree. Of the GAL statutes referenced above, only § 30-4204 concerns admissibility of GAL materials in court. Section 30-4204, which empowers the GAL to obtain information as part of his or her investigation, only permits for the admissibility of information so collected. By its plain terms, § 30-4204 addresses "material obtained by a [GAL]" and does not pertain to a report created by a GAL. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of

statutory words which are plain, direct, and unambiguous. *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021). When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context. *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020). The placement of the admissibility provision proximate to the statutory authority to gather information informs our conclusion that the admissibility provision is directed to the information so gathered. Specifically, the placement of the admissibility provision in the guardianship statutes at § 30-4204, which provides for the gathering of information to present to the court, supports our conclusion that the admissibility provision of § 30-4204 is directed toward that information and not the separate report, the creation of which is authorized by § 30-4205. If the Legislature had wanted the GAL report prepared under § 30-4205 to be admissible, it could have so provided. Compare § 30-4204 (providing for admissibility of information gathered). Contrary to Debra's assertion, § 30-4204 does not address the evidentiary issue surrounding the report authored by the GAL as distinguished from the material collected, and we further observe that such report may contain impressions of the GAL implicating additional layers of opinion and hearsay and their attendant admissibility challenges. It was not error for the county court to sustain objections to the GAL report as hearsay.

[8,9] As noted, the product of the GAL's work included both the recommendation of the GAL contained in the GAL report and informational material attached thereto, the latter of which the GAL had gathered pursuant to § 30-4204. We have carefully examined the record, noting that the county court was not asked to rule separately on the admissibility of medical records and other information attached to the GAL report as distinguished from the report itself. When part of an exhibit is inadmissible, a trial court has discretion to reject the exhibit entirely or to admit the admissible portion. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015). Because it is the proponent's responsibility to separate the admissible

and inadmissible parts when offering evidence, an appellate court will ordinarily uphold a court's exclusion of an exhibit if the proponent did not properly limit its offer to the part or parts that are admissible. *Id.* Specifically, the court was not asked to admit the informational material only, pursuant to § 30-4204, and we therefore do not consider whether the addition of such evidence would have been sufficient had the informational material been properly before the court.

For completeness, we note that, relying on Neb. Rev. Stat. § 30-2619.04 (Reissue 2016), Debra also contends that Jill waived objections to the admissibility of the GAL report by failing to respond to it within 10 judicial days. We reject this argument. Section 30-2619.04 provides that "[t]he petitioner and the proposed ward shall have ten judicial days to file responses to the visitor's evaluation report." Debra's reliance on the court visitor report statutes is misplaced and unavailing. See Neb. Rev. Stat. §§ 30-2619.01 to 30-2619.04 (Reissue 2016). The plain language of § 30-2619.04 applies to visitor reports, and this case concerns a GAL report. We have acknowledged that procedural comparisons may be drawn between the GAL reports and visitor reports in the Supreme Court rules for the nomination of the Office of the Public Guardian. See Neb. Ct. R. 6-1433.01 (2015). However, because § 30-2619.04 does not apply to reports by a GAL, this statute does not limit the time during which a party may object to a GAL report.

Having reviewed the admitted evidence, we do not find that the county court erred when it granted Jill's motion to dismiss Debra's petition for the appointment of a guardian.

## CONCLUSION

For the reasons stated above, we affirm the order of the district court that dismissed Debra's petition for appointment of a guardian for Jill.

AFFIRMED.