IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CAMPBELL V. BEL FURY INVESTMENTS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ARIELLE CAMPBELL AND JAMAL ADDISON, APPELLEES,

V.

BEL FURY INVESTMENTS GROUP, LLC, APPELLANTS.

Filed May 26, 2026.    No. A-25-442.

Appeal from the District Court for Sarpy County: MICHAEL A. SMITH, Judge. Affirmed.

Justin D. Eichmann, of Houghton Bradford Whitted, P.C., L.L.O., for appellant.

J. Mason Bump, of Welch Law Firm, P.C., for appellee.

RIEDMANN, Chief Judge, and MOORE and PIRTLE, Judges.

MOORE, Judge.

## INTRODUCTION

This case involves a dispute between a landlord, Bel Fury Investments Group, LLC (Bel Fury), and tenants, Arielle Campbell and Jamal Addison (collectively "the Plaintiffs"). The dispute concerns whether Bel Fury was required to return any portion of the Plaintiffs' security deposit upon termination of the tenancy and whether Bel Fury was entitled to any damages from the Plaintiffs beyond normal wear and tear. After the Plaintiffs filed the case in small claims court, it was transferred to the county court's civil docket. The county court found that the Plaintiffs met their burden to prove Bel Fury failed to comply with Neb. Rev. Stat. § 76-1416(2) (Cum. Supp. 2024), and it entered judgment against Bel Fury in the amount of the Plaintiffs' security deposit, plus attorney fees and court costs. The county court also found that the Plaintiffs caused damages to the leased premises beyond normal wear and tear and entered judgment against them for $710. Bel Fury appealed to the district court, which affirmed the county court's judgment. Bel Fury then appealed to this court. Finding no error in the district court's decision, we affirm.

STATEMENT OF FACTS

The Plaintiffs rented a house in Bellevue, Nebraska from Bel Fury. The lease was for a term of 2 years, expiring on August 31, 2022. Prior to the end of the lease, the Plaintiffs gave notice of their intent to terminate the lease agreement upon its expiration and asked for return of their security deposit. Bel Fury did not return the deposit and issued several statements to the Plaintiffs alleging amounts owed for damages exceeding the amount of the security deposit. This lawsuit followed.

On December 9, 2022, the Plaintiffs filed a claim against Bel Fury in the county court for Sarpy County, sitting as a small claims court, alleging that they "moved out of the house in July when [they] purchased [their] home," that they "spent the month of August making sure the rental house was in good move out condition," and that they "had to demand for return of the deposit 2x for [Bel Fury] to send [them] a list of fabricated charge[s]." They further alleged that Bel Fury owed and should be ordered to pay them the sum of $3,400.

On March 1, 2023, the case was transferred to the civil docket of the county court. Bel Fury filed an amended answer and counterclaim on November 13, alleging that the Plaintiffs had failed and refused to pay Bel Fury "all contractual amounts and fees due and owing," as well as "the cost of repairs necessary as a result of [Plaintiffs'] deliberate and/or negligent damage to the [p]roperty beyond normal wear and tear." Bel Fury alleged that the Plaintiffs had received "full allowance for all credits and payments due or made," but that upon vacating the property, the Plaintiffs owed Bel Fury and had refused to pay "past due rental and contractual fees, repair fees and other charges totaling $751.94." Bel Fury sought judgment against the Plaintiffs in that amount, plus prejudgment and postjudgment interest and reasonable attorney fees.

A bench trial on the Plaintiffs' claim and Bel Fury's counterclaim was held before the county court on March 28 and August 12, 2024. The court heard testimony from Campbell and Scott Bloemer, the "managing member" of Bel Fury, and received various exhibits offered by the parties, including copies of the lease, various itemized statements sent by Bel Fury to the Plaintiffs and other communications, photographs and videos of the property taken near the times when the Plaintiffs moved in and moved out, invoices from providers who completed work on the property after the Plaintiffs moved out, and an attorney fee affidavit from the Plaintiffs' counsel.

Campbell and Addison signed the rental agreement (lease) with Bel Fury on August 24, 2020. The lease provided that they were renting the specified property from Bel Fury for a period of 24 months, commencing on September 1, 2020. Per the lease, the Plaintiffs agreed to pay a security deposit of $1,160, a nonrefundable pet fee of $290, and monthly rent of $1,160, which included a monthly charge of $30 per pet for the Plaintiffs' two dogs. The lease provided that rent was subject to review and increase upon the first and successive anniversaries of occupancy, in an amount not to exceed 20% of the total annual rent in effect for the previous year. The lease was to extend for an additional period of 12 months unless the Plaintiffs provided Bel Fury at least 2 months' written notice. According to Campbell's trial testimony, the Plaintiffs paid only a combined rent/monthly pet fee total of $1,130 because she "had a doctor's note for one of [her] pets." Bel Fury increased the rental amount by $90 for the second year of the lease for a total monthly payment of $1,220.

At some point in 2022, Campbell applied for rental assistance from the Nebraska Emergency Rental Assistance (ERA) Program. The State paid Bel Fury $3,480 (3 months' rent at the lease rate of $1,160) that Bel Fury credited to the Plaintiffs' account on June 30. Campbell testified that she borrowed money from a family member to pay the June rent while the application for rental assistance was pending. Subsequently, the State sent Bel Fury an email dated July 27, stating that it had learned Campbell "already paid June rent with her own money" and that consequently, "a portion of the funding which has been requested and received no longer meets the program eligibility criteria" defined for the ERA program. The State asked Bel Fury to refund $1,160 to the State.

On June 14, 2022, the Plaintiffs sent Bel Fury a notice to vacate via certified mail. The notice informed Bel Fury of the Plaintiff's intent to end their tenancy on August 31 and included a request to mail their security deposit of $1,160 to a specified address. In his testimony, Bloemer confirmed that the Plaintiffs' notice to terminate complied with the requirements of the lease and that they vacated the property and returned the keys to Bel Fury by August 31, 2022.

Campbell testified that the Plaintiffs were in the process of moving at the time they sent the notice to Bel Fury. The address they provided for Bel Fury to return their security deposit was her sister's address, and Campbell was confident she could receive mail there. However, she did not receive any mail from Bel Fury at her sister's address.

Because the Plaintiffs had not heard from Bel Fury, Campbell called Bel Fury on September 26, 2022. Campbell spoke with one individual who did not know why the Plaintiffs had not received their security deposit. That individual said she would transfer Campbell to a second person and then "the call was suddenly dropped." Campbell called Bel Fury again on September 29 and spoke to the second individual, who told Campbell that she would "send [Campbell] over a list of the charges that they were charging [the Plaintiffs] for." According to Campbell, she did not receive anything that day from Bel Fury. She testified that she had to send an email to Bel Fury "and ask again for the document," which Bel Fury sent by email on September 30. Campbell confirmed that two documents were attached to Bel Fury's September 30 email: a letter dated September 8, and another letter dated September 12.

The letters from Bel Fury were addressed to the Plaintiffs at the address provided in their notice. The letter dated September 8 stated that the Plaintiffs' account was being reviewed and that "necessary charge backs" were being made, which would exceed the Plaintiffs' deposit. The letter also stated that the charge backs currently included "interior painting of the property due to dog odor and non-matching paint" and that once all invoices were received, Bel Fury would mail the Plaintiffs a detailed accounting statement. The letter dated September 12 estimated the Plaintiffs' possible refund to be $84.50. That letter also stated:

> You vacated the property with extensive yard cleaning needed, painting of rooms to match color and cleaning to remove strong dog odor, which resulted in additional charges owing to Bel Fury. We have not received the utility invoice for the month of September, which you will be responsible for. As soon as we receive that bill, we will send you a revised billing statement.

The statement attached to the September 12 letter showed charges for lawn mowing, clearing weeds off the fence line and cleaning the back door, unclogging both sinks, repainting two rooms

"due to wrong color sheen," and deep cleaning the back bedroom "because of strong dog odor." The statement also indicated that utility charges for September had not yet been applied.

Campbell confirmed that she did not receive either the September 8, 2022, letter or the September 12 letter in the mail and that she did not see either of these letters until she received the email from Bel Fury on September 30. Campbell testified that her sister "knew to be on the lookout" for mail from Bel Fury and that her sister did not tell Campbell of any mail coming from Bel Fury. According to Campbell, she spent a lot of time at her sister's address. She testified that she regularly checked the mail there to see if there were any letters for her and that there were not any. She also signed up for an email service from the United States Postal Service, "which can send you a picture of what you are getting in the mail every day," and she testified that "there was no record of any letters coming from Bel Fury." Campbell acknowledged she did not know whether the letters had been mailed by Bel Fury; she only knew that she did not receive them by mail. Bloemer testified that the letters dated September 8 and September 12 would have been sent out by a Bel Fury employee on those dates. He testified that under Bel Fury's standard procedure, such letters are sent out automatically and "enter [Bel Fury's] file after being transmitted to the tenants." Bloemer testified further that "the dates [the letters] were issued was the date that they would have been transmitted to the tenant in some fashion or another."

Bel Fury issued another letter and statement to the Plaintiffs. The letter, dated December 29, 2022, is addressed to the Plaintiffs at the address identified in their claim filed in small claims court. This letter states that Bel Fury had determined the Plaintiffs owed a balance of $270.53 and refers to the attached statement as "a detailed final accounting" of the Plaintiffs' tenancy. The statement, dated September 12, 2022, adds charges for utilities used in September and additional interior cleaning and yard maintenance charges, and it reflects that the Plaintiffs owed a balance of $270.53. Campbell testified that she did not know about the December 29 letter "until we were in the middle of court," confirming that "it came out in discovery."

The exhibits admitted at trial also included a third statement from Bel Fury, in which Bel Fury charged the Plaintiffs rent (and a pet fee) for September 2022 and which included an additional interior cleaning charge and made an adjustment to the amount previously charged for September utilities. This statement, again dated September 12, reflected that after application of the Plaintiffs' security deposit, they owed Bel Fury $751.94 (corresponding to the amount claimed in Bel Fury's counterclaim). According to Bloemer, the statements received into evidence were all dated September 12, because the Bel Fury employee who created them failed to update that section in the computer program containing the charges to the Plaintiffs' account.

On December 5, 2024, the county court entered an order, ruling on the parties' claims. Based on the evidence adduced, the court found that Bel Fury failed to comply with the provisions of § 76-1416(2) to provide the Plaintiffs with the balance of their security deposit and a written itemization of charges against the deposit within 14 days after the tenancy terminated. Accordingly, the court found that the Plaintiffs could recover the full amount of their security deposit, court costs, and reasonable attorney fees. However, the court found insufficient evidence to support an award of liquidated damages, and it declined to order Bel Fury to reimburse the Plaintiffs for the mid-lease rent increase because the Plaintiffs had not pled that issue. The court entered judgment against Bel Fury for $1,160, the amount of the Plaintiffs' security deposit, plus $8,562.50 in attorney fees and court costs of $29.

Turning to Bel Fury's claim, the county court found that Bel Fury suffered damages from the Plaintiffs beyond normal wear and tear to the leased premises but not to the extent claimed by Bel Fury. The court found that Bel Fury was not entitled to damages related to the condition of the yard and fence line because their condition when the Plaintiffs moved in was "not so different" from their condition when the Plaintiffs moved out. The court noted that "slow draining sinks" was an issue the Plaintiffs identified when they moved in and that Bel Fury offered no evidence that this issue was addressed during the Plaintiffs' tenancy. The court found that Bel Fury established damages for the "mismatched paint" left by the Plaintiffs that required repainting as well as the "strong dog odor" that needed to be remedied. It determined that the dog odor issue was not covered by payments made by the Plaintiffs because "according to the lease the pet fee was nonrefundable, and the monthly [pet] fee was an addition to rent." The court found that Bel Fury failed to establish a basis for recovery of September rent and utilities as damages. Finally, it considered Bel Fury's claim for damages for repayment to the State of the rental assistance overpayment. The court concluded that because Bel Fury received June 2022 rent twice, Bel Fury was not damaged by the State's demand for repayment. The court awarded Bel Fury $710 for the damage beyond normal wear and tear to the premises caused by the Plaintiffs, and it entered judgment for that amount against the Plaintiffs.

Bel Fury appealed the county court's order to the district court for Sarpy County. Bel Fury assigned that the county court erred in (1) determining that Bel Fury failed to comply with the provisions of § 76-1416(2); (2) determining that Bel Fury failed to provide Plaintiffs with the balance of the security deposit and a written itemization of charges against the deposit within 14 days after the tenancy terminated; (3) determining that Plaintiffs were entitled to recover the full amount of the security deposit, court costs, and reasonable attorney fees; (4) awarding judgment to Plaintiffs of $1,160, the amount of their security deposit, plus attorney fees of $8,562.50, and court costs of $29; (5) determining that Bel Fury suffered damages from Plaintiffs beyond normal wear and tear but not to the extent claimed by Bel Fury; (6) determining that Bel Fury failed to establish a basis for recovery of September 2022 rent and utilities as damages; and (7) determining that although repayment to the State of Nebraska was required for its overpayment of rental assistance on behalf of Plaintiffs, Bel Fury did not suffer any harm.

After hearing arguments from the parties, the district court entered an order on May 16, 2025, affirming the judgment of the county court. Bel Fury now appeals to this court.

ASSIGNMENTS OF ERROR

Bel Fury assigns, restated, that the district court erred in affirming the county court's determination that (1) Bel Fury failed to comply with the provisions of § 76-1416(2) relative to the Plaintiffs' security deposit and (2) Bel Fury did not suffer damages from the Plaintiffs beyond normal wear and tear and to the extent claimed by Bel Fury. Bel Fury's assigned errors include several subparts that correspond to the other errors it asserted in its appeal to the district court. We have addressed those subparts below to the extent that they were specifically argued in Bel Fury's brief on appeal to this court.

STANDARD OF REVIEW

In an appeal from the county court general civil docket, the district court acts as an intermediate appellate court and not as a trial court. *Peterson v. Brandon Coverdell Constr.*, 318 Neb. 342, 15 N.W.3d 698 (2025). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *In re Estate of Larson*, 311 Neb. 352, 972 N.W.2d 891 (2022).

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. *PSK v. Legacy Outdoor Advertising*, 318 Neb. 1, 13 N.W.3d 81 (2024). And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party. *Id.*

ANALYSIS

*Compliance With § 76-1416.*

Bel Fury assigns that the district court erred in affirming the county court's determination that Bel Fury failed to comply with the provisions of § 76-1416(2) relative to the Plaintiffs' security deposit.

As relevant here, § 76-1416 provides:

(2) Upon termination of the tenancy, property or money held by the landlord as prepaid rent and security may be applied to the payment of rent and the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with the rental agreement or section 76-1421. The balance, if any, and a written itemization shall be delivered or mailed to the tenant within fourteen days after the date of termination of the tenancy. . . .

(3) If the landlord fails to comply with subsection (2) of this section, the tenant may recover the property and money due him or her, court costs, and reasonable attorney's fees. In addition, if the landlord's failure to comply with subsection (2) of this section is willful and not in good faith, the tenant may recover an amount equal to one month's periodic rent or two times the amount of the security deposit, whichever is less, as liquidated damages.

The county court determined that the Plaintiffs properly terminated their tenancy pursuant to the lease and that they timely vacated the premises and relinquished possession to Bel Fury on August 31, 2022. Thus, under § 76-1416(2), Bel Fury was required to deliver or mail the Plaintiffs their entire security deposit or provide them with the balance of their security deposit and a written itemization of charges against the deposit within 14 days after August 31. The county court noted the evidence that the Plaintiffs did not receive the letter "allegedly sent on September 8, 2022," or the letter and itemization "allegedly sent on September 12," and that the Plaintiffs only "became aware of any issues with the full return of their security deposit on September 29, 2022, 15 days

past [Bel Fury's] statutory deadline." The court also noted that the Plaintiffs' "awareness was initiated by" Campbell's phone call to Bel Fury. Applying the language of the statute, the county court found that Bel Fury failed to comply with § 76-1416(2) and that the Plaintiffs were entitled to recover the full amount of their security deposit, court costs, and reasonable attorney fees.

Bel Fury notes that § 76-1416(2) requires the landlord to deliver or mail any security deposit balance and a written itemization to the tenant within 14 days after termination of the tenancy. Bel Fury also notes the court's finding that the Plaintiffs did not receive the letters and the itemization by mail within the 14 day period, and it argues that the county court "skipped over" the actual statutory requirements and failed to determine whether these documents were issued in compliance with the statute. Brief for appellant at 23. We disagree. The county court clearly reviewed the evidence available to it and determined that Bel Fury failed to comply with the provisions of § 76-1416(2). Campbell testified that the Plaintiffs did not receive the letters and itemization until she contacted Bel Fury on September 29 and the documents were not emailed to her until September 30. Bloemer testified to the usual procedures followed by Bel Fury, but he did not send the letters himself. Bel Fury did not call the individual who actually would have mailed the letters and itemization as a witness. We find no clear error in the county court's factual finding regarding whether Bel Fury sent the letters and itemization and thus, we find no error in the county court's finding that Bel Fury failed to comply with § 76-1416(2). The district court did not err in affirming that decision.

Bel Fury argues that there is an inconsistency between the county court's finding that the Plaintiffs are entitled to recover the full amount of their security deposit and its finding that the Plaintiffs caused damage to the premises beyond normal wear and tear of $710. Bel Fury notes that § 76-1416(2) allows a landlord to withhold from a security deposit "the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with the rental agreement." We find no error in this regard. The county court clearly addressed the Plaintiffs' claims separately from Bel Fury's claims.

Finally, in the subparts to Bel Fury's first assigned error, it also challenged the district court's affirmance of the county court's award of attorney fees and costs. Relying on its assertion that the county court erred in finding that Bel Fury failed to comply with § 76-1416(2), Bel Fury argues that the resulting award for the full amount of Plaintiffs' security deposit, court costs, and attorney fees should be reversed. The award of attorney fees and costs is a natural consequence of Bel Fury's failure to comply with § 76-1416(2). See § 76-1416(3). Because we find no error in the county court's determination that Bel Fury failed to comply with § 76-1416(2), we find no error in the resultant award. The district court did not err in affirming the county court's award.

*Bel Fury's Damages.*

Bel Fury assigns that the district court erred in affirming the county court's determination that Bel Fury did not suffer damages from the Plaintiffs beyond normal wear and tear and to the extent claimed by Bel Fury. Bel Fury argues that the county court failed to address its claims for fees incurred to dump trash left behind by the Plaintiffs, for necessary interior cleaning beyond mere repainting, and for lawn mowing expenses. Bel Fury also argues that the county court should have allowed it to recover damages for September 2022 rent and utilities and the repayment to the

- 7 -

State of the ERA overpayment. We find no error in the county court's decision to exclude these items from the damages awarded to Bel Fury or in the district court's affirmance of that decision.

The county court stated that it reviewed the evidence of the condition of the house and yard both when the Plaintiffs moved in and when they moved out. The court found that the condition of the yard and fence line were similar at both times and declined to award damages to return the yard to a better condition than when the Plaintiffs moved in. As to the house, the court concluded that Bel Fury did suffer damages from the Plaintiffs beyond normal wear and tear, and it awarded $710 for repainting and remediation of the dog odor. Although the county court did not explicitly address Bel Fury's other claims for damages to the house beyond normal wear and tear, it clearly rejected such claims, as well as any claims for yard maintenance. We do not reweigh the evidence as to those alleged damages. Resolving any evidentiary conflicts in favor of the Plaintiffs, we find that the county court was not clearly wrong in rejecting those portions of Bel Fury's damages claim, and the district court did not err in affirming that determination.

Bel Fury claims that it was unable to rent the property to a new tenant during the month of September 2022 due to the damage caused by the Plaintiffs, and it argues that September rent and utilities are recoverable consequential damages. Consequential damages refer to economic harm beyond the immediate scope of the contract and do not arise directly from a breach of contract itself. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019). The county court rejected Bel Fury's claim for September rent and utilities, finding that the Plaintiffs complied with the notification provisions of the lease and were not obligated under the lease to pay rent or utilities after vacating the premises on August 31. We find no error in this determination.

Clearly, the lease did not require the Plaintiffs to pay rent and utilities after their tenancy ended. The county court rejected most of Bel Fury's claimed damages to the property as not exceeding normal wear and tear, and we find no error in its determination that September rent and utilities were not damages attributable to the Plaintiffs. The district court did not err in affirming this determination.

Likewise, we find no error in the county court's determination that the Plaintiffs were not responsible to reimburse Bel Fury for its repayment to the State of the State's overpayment of ERA funds. The record shows that the Plaintiffs paid June 2022 rent to Bel Fury. The State paid ERA funds to Bel Fury on behalf of the Plaintiffs, equaling rent for June, July, and August. In other words, Bel Fury received a double payment of the Plaintiffs' June rent obligation. Once the State learned of the overpayment, it sought reimbursement for the June rent from Bel Fury. Clearly, any alleged damage suffered by Bel Fury from having to reimburse the State for an overpayment of rent is not damage attributable to the Plaintiffs. The county court did not err in rejecting this claim and the district court did not err in affirming that determination.

Bel Fury refers to the third itemization admitted at trial, which gave the Plaintiffs full credit for all ERA benefits received by Bel Fury, did not contemplate the return of any portion of those funds to the State, and showed that the Plaintiffs owed $751.94 after application of their security deposit. Bel Fury argues that if the refund of $1,160 to the State is considered, the amount owed by the Plaintiffs would increase to $1,911.94. Bel Fury argues further that had the county court correctly considered the refund of ERA benefits to the State, there would not have been any part of the security deposit refundable to the Plaintiffs upon conclusion of the lease. Bel Fury's

argument ignores the fact that the third itemization does not give the Plaintiffs credit for having paid June rent directly and includes charges for September rent and other damages rejected by the county court. As discussed above, we find no error in the county court's decision with respect to Bel Fury's damages or in the district court's affirmance of that decision.

CONCLUSION

The district court did not err in affirming the judgment of the county court in favor of the Plaintiffs.

AFFIRMED.